KING, Judge.
The issues presented by this appeal are whether the evidence presented at trial was sufficient to sustain a conviction of illegal possession of stolen things and whether the trial court erred in denying defendant’s Motion For A New Trial.
On April 6, 1989, Edsel J. Daigrepont (hereinafter defendant), was charged by bill of information with illegal possession of stolen things with a value in excess of $500.00, a violation of La.R.S. 14:69. Defendant was arraigned and entered a plea of not guilty. After trial, a unanimous six member jury returned a verdict of guilty as charged. Subsequently, defendant was sentenced, as a habitual offender, to serve a sentence of three years and four months at hard labor. Defendant appeals his conviction and sentence based on two assignments of error. We reverse.
FACTS
Mr. Everett Woolie purchased a Honda 4 wheel all terrain vehicle (hereinafter the *960 ATV) on February 27, 1985 for $2,198.00. He kept the ATV at his camp in Pointe Coupee Parish, Louisiana, until it was stolen in May, 1987. On December 23, 1987, defendant bought a Honda 4 wheel ATV and a Honda 3 wheel ATV from Shelton Simpson for $1,200.00. On February 2, 1989, Detective Mancel Galland, of the Avo-yelles Parish Sheriffs Department, acting upon information received from the Concor-dia Parish Sheriffs Department, went to defendant’s home and seized a Honda 4 wheel ATV that was located under his carport. The 4 wheel ATV that Detective Galland seized was later identified as the one that had been stolen from Mr. Woolie’s camp. Defendant was subsequently arrested, charged, tried, and convicted of illegal possession of stolen things with a value in excess of $500.00. Defendant appeals urging two assignments of error, which are:
(1) The jury erred in returning a verdict of guilty against defendant on the charge of illegal possession of stolen things because there was insufficient evidence to convict; and
(2) The trial judge erred in failing to grant a new trial as the jury’s verdict was contrary to the law and the evidence.
LAW
Defendant’s first assignment of error urges that there was insufficient evidence to support the jury’s verdict of illegal possession of stolen things. Specifically, defendant contends that the State failed to prove one of the elements of the crime with which he was charged which was, that he knew or had good reason to believe that the ATV he bought was the subject of a theft.
The elements of illegal possession of stolen things are set out in La.R.S. 14:69:
“A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.”
Thus, in order to convict the defendant of illegal possession of stolen things, the State must prove three things: (1) that defendant intentionally possessed, procured, received or concealed something of value; (2) that the thing had been the subject of a robbery or theft; and (3) that the circumstances indicate defendant knew or had good reason to believe that the thing in question was the subject of robbery or theft.
Defendant contends that the State did not meet its burden of proof at trial as to the third element. The State, on the other hand, claims that defendant knew or should have known that the ATV had been the subject of a theft for three reasons:
(1) Defendant did not pay Simpson a reasonable price for the ATV;
(2) Defendant should have noticed or did notice at the time of the sale or soon thereafter that an attempt had been made to eradicate the serial number on the front axle of the ATV; and
(3) Defendant purchased the ATV from Simpson without requiring proof of ownership or registration and after purchasing it, defendant did not obtain title or file registration.
The critical inquiry on review of the sufficiency of evidence to support a criminal conviction is whether the evidence could support a finding of guilt beyond a reasonable doubt. The relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. Senegal, 542 So.2d 792 (La.App. 3 Cir.1989).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d *961 372 (La.1982), rev’d on rehearing (La.1983). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. However, R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an eviden-tiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Applying these legal precepts to the present case, we conclude that any rational trier of fact, after viewing all of the evidence in the light most favorable to the prosecution would have a reasonable doubt as to defendant’s guilt. The State failed to prove, beyond a reasonable doubt, that defendant knew or had good reason to believe that the ATV was the subject of a theft. Although it is not disputed that defendant possessed stolen property, the mere possession of stolen property does not create a presumption that the possessor knew or should have known that the property was stolen. State v. Ennis, 414 So.2d 661 (La.1982); State v. Daniel 536 So.2d 796 (La.App. 5 Cir.1988), writ den., 541 So.2d 892 (La.1989).
The State contends that defendant knew or should have known that the ATV was stolen because he bought it for a good price. In fact, in closing argument, the State refers to defendant’s purchase price as a “whopping deal”.
The evidence adduced at trial reflects that Mr. Woolie, the original owner of the ATV, bought the ATV in 1985 for $2,198.00. His purchase documents, which reflect the price paid for the vehicle and the serial number, were admitted into evidence. On December 23, 1987, defendant paid Shelton Simpson[1] $1,200.00 for the ATV and another wrecked 3 wheel ATV. Maria Dufour, who was Shelton Simpson’s live-in girlfriend, testified that she was present at the time of the sale. Ms. Duf-our testified that she overheard a conversation at the time of the sale between defendant and his son-in-law, who had accompanied defendant. Defendant’s son-in-law agreed to buy the wrecked 3 wheel ATV from defendant for $400.00, but only after defendant purchased and repaired it. This testimony indicates that defendant was only paying approximately $800.00, out of the total purchase price of $1,200.00 for both ATVs, for the ATV which is the subject of this criminal charge. Ms. Dufour also testified that at the time of the sale, the ATV needed repairs. She stated that whenever she rode it, “the front end would jerk alot” and that the tires “weren’t in good condition.”
Ms. Dufour’s testimony concerning the condition of the ATV was supported by the testimony of defense witness, Merrick Roberts. Roberts is in the business of selling parts for automobiles and ATVs. He stated that he has known defendant for about eight to ten years and that after defendant purchased the ATV, defendant came to his shop to get parts to repair the ATV. Roberts examined defendant’s ATV and noted that it “... was in fair condition. It needed some parts on it that were worn out. Some parts will actually wear out after a normal use. And there were some parts on it that needed to be repaired on it that you couldn’t see.” Roberts also noticed that the ATV needed new tires. According to the receipts and records from his store, Roberts estimated that defendant had spent over $400.00 on repairs to the ATV which is the subject of this criminal charge.
Defendant also called Bruce Witherill to the stand as an expert witness. Witherill is the owner of a Kawasaki/Suzuki dealership and stated that he has dealt with ATVs, both new and used, for about sixteen years. The trial court accepted Withe-rill as an expert witness in the field of appraising ATVs. Witherill stated that the value of ATVs depreciates tremendously over the years. He estimated that the ATV that defendant purchased, on the date that defendant purchased it, was worth *962 approximately $1,000.00 without taking into consideration the needed repairs. Witherill based his estimations on a N.A. D.A. appraisal guide for ATVs.
The State’s expert witness, who was also accepted by the trial court as an expert in the field of appraising ATVs, questioned the validity of Witherill’s method of appraising ATVs. The State’s expert witness, John Lemoine, stated that he did not think that the N.A.D.A. appraisal guide was reliable for appraising ATVs. When asked what he looks at to give appraisals, Lemoine stated that, “[i]t’s a judgment call. It’s a judgment call according to the running of the vehicle, the ... to check and see the wear of it, you know, it just goes by that. And that’s not described in the N.A.D.A. book. There’s no description for that.” Lemoine opined that on December 23, 1987, the date on which defendant bought the ATV, the highest possible value of the ATV was $1,900.00. However, on cross-examination, Lemoine admitted that if someone brought the same type of vehicle into his shop in December, 1987, and that vehicle needed $400.00 worth of repairs, he would offer between $800.00 to $1,000.00 to buy it. The following exchange took place between counsel for defendant and Lemoine:
“Q. Now, if in December, 1987, I brought a bike to your shop, a four-wheeler that needed all of that repaired, what would you pay me for it wholesale if I wanted to sell it to you? ...
A. That’s $400.00 of repair, it depends what the property margin I would want to make on it at that time. I’d try to buy it as cheap as I could get it. You know?
Q. Alright. What would you offer me for it? If you wanted to buy as cheap as you could, what would you offer me for it?
A. That bike ... $800.00 to $1,000.00. I think I’d be making a good deal.
Q. You’d buy it for $800.00? You’d offer me $800.00 for it?
A. If it would have serial numbers and the bike was in Angelo Piazza’s [defense counsel’s] name, yes, I d buy it from you.
Alright. And if it needed this work, you’d offer me $800.00 for it? O*
Yes, sir, I would. <!
And then after you’d do all the work on it, then it would be worth between $1,700.00 and $1,900.00. Isn’t that a fact? &
Yes sir. It depends ... now it depends like I said on what part of the season that it would be.”
This testimony of the State s own witness defeats the State’s argument that defendant got a “whopping deal” when he purchased the ATV. Lemoine admits that only after the repairs were done to the ATV would it be worth from $1,700.00 to $1,900.00. Both the State’s expert witness and the defendant’s expert witness agree that the ATV, in the condition that it was in on the date defendant purchased it, was worth from $800.00 to $1,000.00. The testimony is uncontroverted that defendant paid approximately $800.00 for the ATV. For these reasons, we find that the State has failed to prove that defendant made the “whopping deal” that it referred to in closing argument.
The State also claims that defendant knew or should have known that the ATV was stolen because he should have noticed that the serial number on the front axle had been defaced. Upon careful examination of'the record, we find the reasonableness of this assumption questionable.
Mr. Woolie, the owner of the ATV, testified that the serial number was not “immediately visible when you just walk up there and look at it.” He stated that “you’d have to make an effort to look at it.” In fact, when Detective Galland went to defendant’s residence to seize the ATV, he could not find the serial number on the vehicle even after he had called a state trooper to find out exactly where to look for the serial number on 4 wheel ATVs. When counsel for defendant asked Detective Galland if he would have known if a serial number was supposed to be on the front axle of the *963 ATV, Detective Galland replied “[h]onestly no. If nobody would have told me, no.”
After Detective Galland seized the ATV and brought it to the sheriffs office, he called and asked John Lemoine, who testified as an expert witness for the State, to come down to his office. Mr. Lemoine stated that the reason Detective Galland called him was because he needed help locating the serial number on the ATV. When they realized the serial number had been obliterated, Detective Galland called State Trooper J.E. Norris to assist in obtaining the number from the ATV.
Trooper Norris testified that the surface on the front axle where the serial number is located appeared to have been ground down and repainted. He stated that a prospective purchaser “could look in the area where the vehicle identification numbers, as it’s called, is located, and could see that there was a concave texture to the surface. You could see where there was a grind area where the number had been.” However, under cross-examination, he admitted that someone not familiar with the location of serial numbers on ATV’s could have assumed that any configuration on the front axle could have been caused by an accident or damage to the front area of the vehicle.
Thus, the evidence as a whole, even the testimony of the State’s own witnesses, tends to prove that the absence of the serial numbers was not readily noticeable. It is not at all clear that defendant should have seen that an attempt had been made to scratch out the serial numbers on the front axle or that if he had noticed the area in question, that he should have realized that what he saw was a defacement of serial numbers. Considering the used condition of the ATV, it is equally reasonable to assume that defendant thought any scratches or dents on the vehicle were caused by accidents or simple wear and tear of the vehicle.
Finally, the State contends that because defendant bought the ATV without requiring proof of ownership and registration and because after he purchased the vehicle he did not obtain title or have it registered, he knew or should have known that the ATV was stolen. This contention, however, is not supported by the testimony in the record. The expert witnesses testified that it was common for owners of ATVs not to obtain title or registration.
Defendant’s expert witness testified that it is common for individuals who sell or trade these vehicles not to get any of the paperwork associated with the sale or trade. The State’s expert witness testified that he knows of people who own ATVs that do not transfer title simply because they do not want to spend the extra money to transfer the title on an off-road vehicle.
Therefore, the fact that defendant did not request and obtain title or registration on the ATV does not prove, as the State contends, that he knew the ATV was stolen. To the contrary, the testimony reflects that it was common practice among individuals involved in sales of these ATV vehicles to overlook the formalities of obtaining title or registration.
The State did not present any direct evidence that defendant knew or had good reason to believe that the ATV was stolen. The only direct evidence concerning defendant’s knowledge at the time of the sale came from Maria Dufour, Shelton Simpson’s live-in girlfriend, and this testimony tended to exculpate defendant. Ms. Dufour testified that she never heard Shelton Simpson tell defendant that the ATV was stolen and that she did not think that defendant knew that it was stolen. However, the significance or weight of this testimony is questionable considering the State impeached Ms. Dufour’s credibility when it forced her to admit that defendant’s wife had asked her to testify that the ATV was not stolen.
The State relied on circumstantial evidence to prove that defendant knew or should have known that the ATV was stolen. La.-R.S. 15:438, setting forth the rule as to circumstantial evidence, provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
*964 In this case, defendant used a check; not cash to pay for the ATV and the evidence suggests that he paid the fair market value. Defendant did not try to hide or conceal the ATV. He kept it under his carport in plain view to the public. Defendant cooperated with the police throughout their investigation and even drove the ATV onto the back of the police officer’s truck so that he could take it to the station.
After reviewing all of the evidence in the light most favorable to the prosecution, we conclude that no rational trier of fact could have excluded every reasonable hypothesis of innocence and found that the State had proved, beyond a reasonable doubt, that defendant knew or had good reason to believe that the ATV was the subject of a theft. The State has failed to prove an essential element of the crime of illegal possession of stolen things. Therefore, we reverse defendant’s conviction and set aside his sentence.
Since we find merit in defendant’s first assignment of error and reverse on those grounds, we pretermit discussion of defendant’s second assignment of error.
For the reasons assigned, we reverse the conviction of defendant and set aside defendant’s conviction and sentence and order that he be discharged.
REVERSED.

. We note that Shelton Simpson was also charged with illegal possession of stolen things but was not present in court for his trial and a bench warrant was issued for his arrest.