765 So.2d 357 (1999)
STATE of Louisiana
v.
Ricky CARTHAN.
No. CR99-512.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
*359 Richard Phillip Ieyoub, David W. Burton, Assistant District Attorney, DeRidder, LA, Counsel for the State.
Edward K. Bauman, Lake Charles, LA, Ricky Carthan, Counsel for Defendant.
Before YELVERTON, THIBODEAUX, and SULLIVAN, Judges.
SULLIVAN, Judge.
Defendant, Ricky Carthan, was charged with two counts of illegal possession of stolen things, violations of La.R.S. 14:69. The first count resulted in a felony conviction, as the jury found that the stolen items, stainless steel railroad tank car valves and other metal parts, had a value greater than $100 but less than $500. The jury returned a misdemeanor conviction on the second count, which involved a stolen cellular phone.
The State then filed a habitual offender bill alleging that Defendant was a fourth felony offender and that one previous felony was defined as a crime of violence under La.R.S. 14:2(13). After a hearing, the trial court determined that the allegations of the habitual offender bill were correct. The trial court imposed the mandatory sentence of life imprisonment under La.R.S. 15:529.1(A)(1)(c)(ii) for the felony conviction and sentenced Defendant to six months in the parish jail for the misdemeanor conviction, with the sentences to run consecutively. On appeal, Defendant's appointed counsel assigns two errors, and Defendant, pro se, assigns five.

Facts
On January 23, 1998, officers with the DeRidder Police Department responded to a complaint of theft at an aluminum recycling center. The victim, Glen Smith, who owns and operates Glenco Valve Service, Inc., reported that someone had stolen several items from his business and then sold them to the recycling center for cash. The items included a 90-degree stainless steel elbow pipe and stainless steel railroad tank car valves, which Mr. Smith refurbishes in his business. Mr. Smith valued the stolen items in their present condition at approximately $2,000. Tony Fontenot, a co-owner of the recycling center, reported that he purchased the items from Defendant and two unknown black males for approximately $65. Mr. Fontenot testified that Defendant had sold "stuff" to the center "every now and then."
During questioning at the police station, Defendant stated that he bought the items for about $10 or $15 from a man who drove a beige truck and was known only as "Scarface." Defendant said that "Scarface" approached him in his driveway about buying "some aluminum that come off of his boy's job." Defendant told the police that he asked "Scarface" if the items were stolen, as he does with whatever he buys, and further, that "Scarface" did not appear to be a thief.
In his statement, Defendant identified three other persons who should have witnessed his conversation with "Scarface": a juvenile named Felipe Santiago, David Crocket, and Defendant's tenant, Thomas Smith. Neither Felipe nor Mr. Crocket *360 testified at Defendant's trial. Mr. Smith testified that one morning a man driving a beige-looking truck stopped at Defendant's house located next door. Mr. Smith overheard Defendant ask the man if the items were stolen, but he did not hear the response, nor did he witness the transaction. Steve Tantin, the young man who drove Defendant and his friends to the recycling center to sell the items, also testified that Defendant told him that he bought the items from a man called "Scarface." Officer Shane Fruge testified that he attempted to locate "Scarface" by patrolling the streets of DeRidder, but his efforts were unsuccessful.
After Defendant authorized a search of his home, the police found a cellular phone that had been reported stolen from a vehicle owned by Deana Spears. In a second statement at police headquarters, Defendant reported that the juvenile, Felipe, offered to sell the phone to Defendant after admitting that he stole it from the Spears vehicle. Defendant told the police that he declined Felipe's offer to buy the phone, but that Felipe left the phone on his front porch. Defendant's grandmother, who lives with him, testified that she found the phone on the porch and brought it into the house to protect it. Defendant also said in his statement that Felipe may have hidden other stolen phones either under or in his house, but the police found only the phone stolen from the Spears vehicle.

Sufficiency of the Evidence
Defendant, through his appointed counsel and in a pro se assignment, argues that the evidence presented at trial was insufficient to support a conviction of felony grade illegal possession of stolen things. Defendant contends that the State failed to prove (1) he knew or had good reason to believe the items were stolen and (2) the value of the items exceeded $100.
In reviewing the sufficiency of the evidence to support a criminal conviction, the critical inquiry on appeal is whether the evidence supports a finding of guilt beyond a reasonable doubt. "The relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime [proved] beyond a reasonable doubt." State v. Daigrepont, 560 So.2d 959, 960 (La.App. 3 Cir.), writ denied, 566 So.2d 396 (La.1990) (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The Jackson standard allows an appellate court "to impinge `on the actual factfinder's discretion... only to the extent necessary to guarantee the fundamental protection of due process of law.'" State v. Juluke, 98-341, p. 4 (La.1/8/99); 725 So.2d 1291, 1293 (quoting State v. Mussall, 523 So.2d 1305, 1310 (La.1988) (alteration in original)). "Given this limited purpose, the Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial." Id. See also State v. Williams, 98-1146 (La.App. 5 Cir. 6/1/99); 738 So.2d 640.
When circumstantial evidence forms the basis of the conviction, the elements of the crime must be proved such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. However, "[w]hen a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant[ ] ... that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." State v. Chester, 97-1001, p. 1 (La.12/19/97); 707 So.2d 973 (quoting State v. Captville, 448 So.2d 676, 680 (La.1984) (alteration in original)).

Guilty Knowledge
La.R.S. 14:69(A) provides:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any *361 robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
To obtain a conviction, the State had to prove beyond a reasonable doubt that (1) Defendant intentionally possessed, procured, received or concealed something of value; (2) the thing was stolen; and (3) the circumstances indicate Defendant knew or had good reason to believe that the thing was stolen. Daigrepont, 560 So.2d 959. Mere possession of stolen property does not create a presumption that a defendant knew or should have known the property was stolen; however, a defendant's guilty knowledge may be inferred from the circumstances of the offense. Chester, 707 So.2d 973.
In the present case, the State and Defendant introduced as a joint exhibit Defendant's statement to the police wherein he reported buying the metal parts from someone known only as "Scarface" who drove a beige truck. In that statement, Defendant described "Scarface" as a black male approximately nineteen years old with both a scar and a tattoo on the right side of his face. Officer Fruge testified that he could not find anyone who either fit that description or knew of someone who did. Defendant called to the stand his tenant, Mr. Smith, who testified that he overheard Defendant ask a man driving a beige truck if something was stolen. Mr. Tantin, who drove Defendant and his friends to the recycling center, also testified that Defendant said he bought the metal parts from someone named "Scarface." However, Mr. Tantin admitted that in a previous statement to the police, which was taken shortly after the incident, he did not mention "Scarface," but instead reported that Defendant told him the metal parts came from a trailer that had been parked at Defendant's home.
On this record, we find that the jury reasonably rejected the "Scarface" hypothesis of innocence. The jury heard that the police could not confirm "Scarface's" existence as well as Mr. Tantin's admission that Defendant offered another explanation as to how he came to possess the stolen items. In light of this testimony, the jury was reasonable in rejecting Mr. Smith's corroboration of Defendant's statement. Without the "Scarface" hypothesis, there is no remaining hypothesis of innocence. "In a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court therefore `does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion.'" Juluke, 98-341, p. 5; 725 So.2d at 1293 (quoting Captville, 448 So.2d at 680).

Value
Citing the large discrepancy in the value of the items as estimated by Mr. Smith and the amount actually paid for them by Mr. Fontenot, Defendant contends that no rational trier of fact could have concluded the total value of the items exceeded $100.
At trial, Mr. Smith testified that the items stolen from his business had an approximate value of $2,000 in their present condition, but that they would be worth more if he were to refurbish the valves for sale. Mr. Smith was aware of only one other business in the country, located in Chicago, Illinois, that reconstructed railroad tank car valves. He estimated that it would cost about $300 to have a similar 90-degree elbow pipe fabricated. He admitted, however, that he did not purchase the pipe that was stolen, but that he "swapped" something for it with Lee Cook, an owner of the recycling center. (He did not state that Mr. Cook gave him the part with no remuneration as the Defendant indicates in his brief.)
Mr. Fontenot of the recycling center bought the items as scrap metal for approximately $65. According to Mr. Fontenot, this price was based on the market *362 rate per pound of stainless steel, without regard to the identity or condition of the items. As he explained, "It could be a working valve; you'd still get the same price as a run-over piece of junk."
The trier of fact is to consider the value that the stolen items have to the victim. See State v. Harris, 97-778 (La.3/4/98); 708 So.2d 387. "Unless it is shown the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its weight being left to the jury." State v. Stack, 97-1176, p. 7 (La.App. 5 Cir. 4/15/98); 710 So.2d 841, 844 (quoting State v. McCray, 305 So.2d 433, 435 (La.1974)). In this case, the victim owned a specialized business that refurbished and sold railroad tank car valves. To the victim, the stolen items were of value in the unusual service he provided rather than as scrap metal. The jury did not err in accepting the victim's testimony as to the value that these items had to his business.
These assignments of error lack merit.

Affirmative Defense
In this pro se assignment, Defendant argues that the trial court erred in refusing to instruct the jury on the affirmative defense in La.R.S. 14:69(C) to his misdemeanor conviction of illegal possession of the stolen cellular phone.
La.R.S. 14:69(C) provides:
It shall be an affirmative defense to a violation of this Section committed by means of possessing, that the accused, within seventy-two hours of his acquiring knowledge or good reason to believe that a thing was the subject of robbery or theft, reports that fact or belief in writing to the district attorney in the parish of his domicile.
Defendant claims that he was entitled to this instruction because he gave a written statement and turned in the phone to Officer Fruge. We disagree.
In State v. Smith, 414 So.2d 1237, 1241 (La.1982) (emphasis added), the supreme court stated:
In a criminal prosecution, the trial court must charge the jury, when properly requested, as to the law applicable to any theory of defense which jurors could reasonably infer from the evidence, but this charge must be supported by the evidence presented at the trial, as the trial court is not required to instruct the jury on abstract principles of law.
After his arrest on January 26, 1998 on an unrelated charge (illegal possession of the stolen railroad tank car valves), Defendant told Officer Fruge that a cellular phone stolen by Felipe Santiago was at his home. Defendant also stated that Felipe may have hidden other stolen phones under or in his house. Defendant signed a form permitting the search of his home, where the police found the phone stolen from the Spears vehicle. No other phones were found. On February 2, 1998, about one week later, Defendant gave another statement to the police, wherein he stated that Felipe had brought the stolen phone to his house on January 25, 1998, the night before he was arrested, and tried to sell it to him for $50. Defendant also stated that he did not report his possession of the phone that night to the police.
We find that Defendant's statement to Officer Fruge was not made for the purpose of reporting the possession of stolen property as described in La.R.S. 14:69(C). Defendant's statement was made shortly after his arrest on an unrelated charge. Thus, Defendant did not avail himself to authorities solely for the purpose of turning in the property. Defendant did not complete a written report of his possession of the stolen property at that time, but only had a conversation with the investigating officer. Defendant did not give a written statement until February 2, 1998, but its purpose appears to clear himself regarding his possible involvement in the theft of the phone. For these reasons, we find that the trial judge did not err in its *363 refusal to instruct the jury as to this affirmative defense.
This assignment of error lacks merit.

Habitual Offender Proceedings
In support of the habitual offender bill, the State introduced evidence of three prior felony convictions: (1) on January 17, 1979, a jury in Beauregard Parish found Defendant guilty of attempted aggravated rape, for which he was sentenced to twelve years at hard labor and was released from custody on January 21, 1987; (2) on January 6, 1995, Defendant entered a counseled guilty plea in Beauregard Parish to "mid grade" theft (items valued between $100 and $500), for which he was sentenced to two years at hard labor; and (3) on April 9, 1997, Defendant entered a counseled guilty plea in Vernon Parish to two felony counts of issuing worthless checks, for which he was sentenced to one year on the first count and two years on the second. The instant conviction of felony illegal possession of stolen things occurred on August 18, 1998. In three pro se assignments of error, Defendant contests his adjudication as a fourth felony offender.

Identity
Defendant first argues that the State failed to prove his identity as the person convicted in 1979 for attempted aggravated rape because it did not introduce expert testimony linking his fingerprints to the conviction. In State v. Jackson, 31,433, pp. 24-25 (La.App. 2 Cir. 1/20/99); 726 So.2d 1061, 1076 (emphasis added), the court advised:

Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as the testimony of witnesses, expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of identical driver's license number, sex, race and date of birth.
In Jackson, the trial judge was permitted to take judicial notice that the defendant in the habitual offender proceeding was the same person that appeared before him in the trial of the underlying conviction. The court also noted that the defendant's picture was included in an authenticated "pen pack." In State v. Martin, 28,489 (La.App. 2 Cir. 8/21/96); 679 So.2d 557, writ denied, 96-2367 (La.2/7/97); 688 So.2d 498, the prosecuting attorney was permitted to identify the defendant in the habitual offender proceeding as the same person who had entered a prior guilty plea in his presence. In the instant case, the State identified Defendant through the testimony of the District Attorney for Beauregard Parish, who personally prosecuted the attempted aggravated rape case, and the testimony of the investigator who worked on that case. The State also introduced a "pen pack" that contained Defendant's photograph. We find no error.

Prior Guilty Plea
Defendant next argues that the trial court should have quashed the habitual offender bill because he did not knowingly and voluntarily waive his constitutional rights in his 1995 guilty plea to felony theft. The State introduced the minute entry of the guilty plea, the waiver of rights form signed by Defendant, and a transcript of the Boykin colloquy in which the trial court advised Defendant of his three Boykin rights. Defendant has failed to specify any defect in these documents, other than to allege that the Boykin transcript is "imperfect." We disagree. In State v. Shelton, 621 So.2d 769, 775 n. 12 (La.1993), the supreme court defined a "perfect" transcript as one "which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin." After reviewing the transcript, we find that it meets these requirements. As the State has introduced a "perfect" transcript and Defendant has not identified any constitutional infirmity in the taking of the plea, we find no error in its use to enhance the *364 instant conviction. See Shelton, 621 So.2d 769.

Ex Post Facto Prohibition
Defendant next argues that the trial court violated the ex post facto clause in applying the current ten-year cleansing period of La.R.S. 15:529.1(C) rather than the five-year cleansing period in effect at the time of the first conviction. In State v. Brinson, 97-1471 (La.App. 4 Cir. 9/3/97), 699 So.2d 510, writ denied, 97-2452 (La.4/9/98); 717 So.2d 1137, the fourth circuit held that the cleansing period of La. R.S. 15:529.1 in effect at the time of the latest offense was controlling and, further, that the application of the current cleansing period did not violate the ex post facto clause. As the supreme court stated in State v. Rolen, 95-347, p. 5 (La.9/15/95); 662 So.2d 446, 449: "Cleansing periods are, however, purely statutory rules constituting self-imposed restraints on the state's plenary power to define and punish crimes. Due process does not require them and several Louisiana repeat offender statutes do not have them." We, likewise, find no violation of the ex post facto clause here.
These assignments of error lack merit.

Excessive Sentence
In this assigned error, Defendant argues that a mandatory life sentence is unconstitutionally excessive, considering the length of time that has elapsed since the commission of the one crime of violence in 1979.
"Louisiana's judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness." State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). This power extends to minimum sentences mandated by La.R.S. 15:529.1. Id. However, before the punishment mandated by the Habitual Offender Law can be found excessive, the trial court must first determine that (1) "the sentence makes no measurable contribution to the acceptable goals of punishment" or (2) "the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime." State v. Johnson, 97-1906, pp. 2-3 (La.3/4/98); 709 So.2d 672, 674.
The supreme court in Johnson, 97-1906 at pp. 7-8; 709 So.2d at 676-77 (emphasis added) prescribed the following analysis:
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. See State v. Dorthey, supra at 1281 (Marcus, J., concurring); State v. Young, [94-1636 (La.App. 4 Cir. 10/26/95); 663 So.2d 525, writ denied, 95-3010 (La.3/22/96); 669 So.2d 1223]. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.
. . . .
... [T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Young, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).
When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant *365 with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.
In addition to Defendant's four felony convictions, a presentence investigation report (PSI) reveals that Defendant had been arrested for several other serious crimes, including forcible rape in 1977, simple burglary in 1991 and 1995, theft in 1989, 1995, and 1996, shoplifting in 1992 and 1995, simple robbery in 1992, and armed robbery in 1995. The PSI also reveals a conviction for theft of goods/shoplifting in 1997. In finding that the mandatory life sentence was not excessive, the trial court stated:
Although there may be very good reasons that these other charges were not prosecuted, these additional arrests for serious offenses are indicative of your propensity to commit crimes when combined with your record of actual felony convictions. The evidence at the trial of the habitual offender bill and the PSI clearly show that you have lived a life of crime. It is with persons like yourself in mind that the legislature adopted our Habitual Offender Law.
The PSI states that the 1977 charge of forcible rape was dropped at the request of the victim's parents. Defendant's 1995 conviction for theft also involved the aluminum recycling center: Defendant was identified as a suspect when wheelbarrow tracks from the center led to his home. When Defendant committed the crime of issuing worthless checks in Vernon Parish, he was still on parole for the theft conviction. The trial court's conclusion about Defendant's propensity to commit crime is supported by the record. Defendant has chosen to engage in criminal activity in spite of his ability to earn an honest living as an offshore caterer. For these reasons, we find that Defendant failed to rebut the presumption of constitutionality of the mandatory habitual offender sentence.
This assignment of error lacks merit.

Errors Patent
In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record.
First, we note that the trial court failed to impose Defendant's sentence of life imprisonment without benefit of parole, probation, or suspension of sentence as required by La.R.S. 15:529.1(A)(1)(c)(ii). Since no one has complained of this illegally lenient sentence, this court will not recognize the error. State v. Hines, 95-111 (La.App. 3 Cir. 10/4/95); 663 So.2d 199, writ denied, 95-2686 (La.2/9/96); 667 So.2d 528 (citing State v. Jackson, 452 So.2d 682 (La.1984)). (Although Jackson was legislatively overruled by Acts 1999, No. 94, that act did not become effective until August 15, 1999, almost seven months after Defendant was sentenced. Thus, Jackson was still good law at the time of sentencing.)
Second, we note that the trial court did not advise Defendant of his right to remain silent and his right to a hearing before being adjudicated an habitual offender. However, we find this error harmless, as Defendant exercised his right to remain silent and to have a full evidentiary hearing. See State v. Bush, 31,710 (La.App. 2 Cir. 2/24/99); 733 So.2d 49, writ denied, 99-1010 (La.9/3/99); 747 So.2d 536.
Finally, Defendant argues that the trial court committed error patent by failing to *366 give him credit for time served. We find no error in light of the 1997 amendment to La.Code Crim.P. art. 880, which made credit for time served automatic.

Decree
For the above reasons, Defendant's convictions and sentences are affirmed.
AFFIRMED.