STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-48

STATE OF LOUISIANA

VERSUS

CALEB A. BAXLEY

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 12-408
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and J. David Painter, Judges.

CONVICTION AFFIRMED.  SENTENCE VACATED AND REMANDED
FOR RESENTENCING.

James P. Lemoine
District Attorney
Renee W. Dugas
Assistant District Attorney
Post Office Box 309
Colfax, LA   71417-0309
(318) 627-3205
COUNSEL FOR APPELLEE:
      State of Louisiana

**Brent A. Hawkins**
**Louisiana Appellate Project**
**Post Office Box 3752**
**Lake Charles,   LA 70602-3752**
**(337) 502-5146**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Caleb A. Baxley**

**AMY, Judge.**

The defendant was convicted of illegal possession of stolen things valued $1,500.00 or more. Thereafter, the trial court sentenced the defendant to ten years at hard labor, ordered that the defendant pay restitution to the victim, and imposed various fees and costs. The defendant appeals. We affirm the defendant's conviction, vacate his sentence, and remand for resentencing in conformity with this opinion.

## Factual and Procedural Background

The defendant, Caleb A. Baxley, was charged with illegal possession of stolen things valued $1,500.00 or more, a violation of La.R.S. 14:69, and theft of a motor vehicle, a violation of La.R.S. 14:67.26, in connection with the theft of two motor vehicles in April of 2012. After a jury trial, the defendant was found not guilty of theft of a motor vehicle and guilty of illegal possession of stolen things valued $1,500.00 or more. For his illegal possession of stolen things conviction, the trial court sentenced the defendant to ten years at hard labor. The trial court also ordered the defendant to make restitution to the victim and allowed the defendant to reserve his right to a restitution hearing if he and his probation officer could not agree on the amount of restitution owed. Further, the trial court ordered that the defendant's restitution be paid in equal installments during his parole. The trial court also ordered the defendant to pay court costs and $1,000.00 to the Public Defender's Office.

The defendant appeals, asserting that the evidence was insufficient to support his conviction.

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After performing such a review, this court finds an error concerning the defendant's sentence which requires vacating the defendant's sentence and remanding for resentencing.

Our review of the record reveals that the trial court ordered the defendant to pay restitution to the victim, Barry Batiste. However, the trial court did not set the amount of restitution due, instead reserving the defendant's right to a restitution hearing. Pursuant to La.Code Crim.P. art. 883.2(A), "the trial court shall order the defendant to provide restitution to the victim" where the trial court finds "an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution[.]" This court has previously determined that, where restitution is ordered as either a condition of probation or as part of the defendant's principal sentence, failure to state the amount of restitution results in an indeterminate, and therefore illegal, sentence. *State v. Joseph*, 05-186 (La.App. 3 Cir. 11/2/05), 916 So.2d 380. Thus, the defendant's sentence must be vacated and remanded for resentencing. *Id.*[1]

Accordingly, we vacate the defendant's sentence and remand the matter for resentencing.

---

[1] Pursuant to our review of the record, we also note that the trial court ordered that the defendant's restitution be paid in monthly installments. While restitution may be ordered to be paid in monthly installments when ordered as a condition of probation, the same is not true where restitution is ordered as a part of the defendant's principal sentence. *See State v. West*, 04-793 (La.App. 3 Cir. 11/10/04), 887 So.2d 657.

*Sufficiency of the Evidence*

The defendant's sole assignment of error concerns the sufficiency of the evidence for his conviction for illegal possession of stolen things valued $1,500.00 or more.

In *State v. Captville*, 448 So.2d 676, 678 (La.1984) (footnote omitted), the supreme court discussed review of sufficiency of the evidence claims, stating that:

> In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, which was adopted by the Legislature in enacting La.C.Cr.P. Art. 821 pertaining to postverdict motions for acquittal based on insufficiency of evidence, is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.

In so doing, the appellate court should only impinge upon the factfinder's discretion to the extent necessary to guarantee fundamental due process protections and may not second guess the rational credibility determinations of the factfinder. *State v. Carthan*, 99-512 (La.App. 3 Cir. 12/8/99), 765 So.2d 357, *writ denied*, 00-359 (La. 1/12/01), 798 So.2d 547. Further, where the conviction is based on circumstantial evidence, "assuming every fact to be proved that the evidence tends to prove[,]" the evidence must exclude every "reasonable hypothesis of innocence[.]" *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170 (quoting La.R.S. 15:438), *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007). However, the circumstantial evidence rule does not establish a stricter standard of review than the more general "reasonable doubt" formula. *State v. Chism*, 436 So.2d 464 (La.1983).

"Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses." La.R.S. 14:69(A). Where the value of the thing is $1,500.00 or more, the defendant's sentencing exposure is imprisonment for not more than ten years, with or without hard labor, a fine of not more than $3,000.00, or both. La.R.S. 14:69(B)(1). Thus, the State had to prove beyond a reasonable doubt: 1) that the defendant intentionally possessed, procured, received, or concealed something of value; 2) that the thing was stolen; and 3) that circumstances indicated that the defendant knew or had good reason to believe that the thing was stolen. *See Carthan*, 765 So.2d 357. The State need not prove that the defendant was in actual possession of the stolen item(s) in order to support a conviction but may prove that the item(s) were in the defendant's constructive possession, *i.e.*, within the defendant's dominion or control. *State v. Short*, 00-866 (La.App. 5 Cir. 10/18/00), 769 So.2d 823 (citing *State v. Skipper*, 527 So.2d 1171 (La.App. 3 Cir. 1988), *writ denied*, 559 So.2d 132 (La.1990)), *writ denied*, 00-3271 (La. 8/24/01), 795 So.2d 336.

The evidence presented at the defendant's trial consisted of evidence concerning the theft of a 2000 GMC 2500 truck, for which the defendant was found not guilty, and the defendant's possession of a stolen 1999 GMC Suburban, for which the defendant was found guilty. The owner of the Suburban, Barry Batiste, described the Suburban as "tan-ish/gold-ish at the top and brownish/gray at the bottom" and as having temporary tags. He stated that it was in drivable

4

condition when he purchased it and that he paid approximately $3,200.00 for the vehicle.

According to Mr. Batiste, one evening he parked the Suburban outside his home in Alexandria, and, when he came out the next morning, it was missing. He stated that he left his keys in the vehicle, which is how "they" were able to drive the vehicle. Mr. Batiste called the police to report the Suburban missing and testified that he informed the police of several items that were inside it. Mr. Batiste testified that he had not given anyone permission to use the vehicle and did not know who might have taken it. Further, Mr. Batiste testified that he did not know the defendant and had never seen him before the day of trial. Mr. Batiste stated that he had not given the defendant permission to use his vehicle. Mr. Batiste also noted that, when he got the vehicle back, its rearview mirror had been "snatched out[.]"

In a separate incident, a 2000 GMC 2500 truck was stolen in Dry Prong, Louisiana, which was the basis for the defendant's theft of a motor vehicle charge. While investigating the theft of the truck, the police learned from William Jarvis, one of the defendant's neighbors, that a possibly-stolen Suburban was parked in the defendant's back yard. The Dry Prong Chief of Police, Darrell Rushton, testified that, after learning that information, he called the Alexandria Police Department and confirmed that a Suburban matching the description given by Mr. Jarvis had been stolen.

There was testimony that Chief Rushton and Sergeant Joshua Daniels of the Grant Parish Sheriff's Office proceeded to the defendant's house. However, the defendant and his girlfriend, Jasmine Matney, were not home. Sergeant Daniels testified that there was a tan Suburban parked behind the house, in clear view of

5

the street. Chief Rushton testified that the Suburban was within five feet of the back steps and that a temporary tag was lying on the front seat of the vehicle. According to the two officers, the Suburban's Vehicle Identification Number matched that of the vehicle reported stolen in Alexandria. Chief Rushton testified that he contacted the owner of the vehicle, Mr. Batiste, and received a list of things that were supposed to be in the vehicle. According to Chief Rushton, he obtained a search warrant for the defendant's residence after doing a preliminary search of the vehicle and not finding any of the items. Additionally, Sergeant Daniels testified that the vehicle's radio had been removed.

Thereafter, Chief Rushton and Sergeant Daniels executed the search warrant. Both officers testified that they located in the defendant's house several of the items which were listed as missing. Mr. Batiste testified that the missing items included his wallet, Social Security card, and insurance card. Chief Rushton testified that the officers located items on a coffee table in the residence that included items that had Mr. Batiste's name on them, such as a Social Security card, insurance papers, and a medical card. Sergeant Daniels testified that, "in plain view" in the residence, the officers located a nylon bag and items including a Social Security card that were reported as missing. Although Chief Rushton testified that he contacted the State Police about obtaining additional evidence from the recovered vehicle, both Chief Rushton and Sergeant Daniels testified that they never received any fingerprint evidence.

In addition to this testimony, the defendant's neighbors, William and Peggy Jarvis testified. Mr. Jarvis testified that he "thought there was a whole lot of stealing going on" and called the police because he was concerned that his son

6

might have been involved. Mr. Jarvis stated that his son, Edward Otie Jarvis,[2] was good friends with the defendant and that, although he did not have any reason to think that Otie was involved in the thefts, he was a "mischievous problem child." After testifying about his knowledge of the events surrounding the theft of the 2000 GMC 2500 truck, Mr. Jarvis addressed the Suburban. Mr. Jarvis testified that a Suburban "showed up" behind the defendant's house and sat there for a few days. He never looked at it that closely, but he believed that "it came out" that the truck belonged to the defendant's boss or perhaps his live-in girlfriend's boss.

Peggy Jarvis testified that Jasmine Matney, the defendant's live-in girlfriend, drove a blue van. She also testified that she asked the defendant about the Suburban, and he told her that "some boss-man" had loaned it to them and that Jasmine got it from "some man." Mrs. Jarvis testified that she concluded that it had been stolen, because the defendant was not working. During Mrs. Jarvis' testimony, the following colloquy occurred:

> [The State]: The first conversation you had about the Suburban, you were told that it belonged to Jasmine's boss?
>
> [Mrs. Jarvis]: No. Caleb's boss.
>
> Q: Caleb's boss. Was Caleb working?
>
> A: No. That's how I knew.
>
> Q: And then, at some point later on he admitted they had stolen it.
>
> A: Yes.

Further, Chief Rushton testified that the Jarvises' house and the defendant's house were very close together and that they visited each other. Additionally, the

---

[2] Otie Jarvis' middle name is also spelled "Ode" and "Odie" in the record. We use the spelling contained in the trial transcript.

defendant elicited testimony from Chief Rushton that his initial investigation was based solely on information learned from the Jarvises.

The owner of stolen property's testimony may "constitute ample evidence of the property's value." *State v. Johnson*, 04-1266, p. 14 (La.App. 3 Cir. 2/2/05), 893 So.2d 945, 955 (quoting *State v. Davis*, 569 So.2d 131 (La.App. 1 Cir. 1990)). Thus, Mr. Batiste's testimony was sufficient such that a rational juror could have found beyond a reasonable doubt that the 1999 Suburban was stolen and was worth in excess of $1,500.00.

With regard to the defendant's possession of the Suburban and knowledge that it was stolen, in *Skipper*, 527 So.2d 1171, in connection with the theft of a truck, the defendant was convicted of illegal possession of stolen things. The police apprehended the defendant after responding to a silent alarm at a car dealership, and a wrecked vehicle was located in the ditch a short distance from the dealership. *Id.* There was testimony that the vehicle had been stolen sometime earlier and that a set of keys belonging to the vehicle and a wallet, which had contents that were identified as belonging to the vehicle's authorized user, were found on the defendant when he was arrested. *Id.* This court found that the defendant's proximity to the stolen vehicle and possession of the vehicle's keys and property belonging to the vehicle's user were sufficient to show that the defendant intentionally possessed the stolen vehicle. *Id.* Further, this court determined that the defendant's possession of an insurance card issued to the owner of the vehicle and credit cards issued to its authorized user were sufficient to establish that the defendant knew that the vehicle was stolen. *Id.*

In *Short*, 769 So.2d 823, the defendant was convicted of several counts of illegal possession of stolen things after items which were looted from multiple

homes were found in an apartment which was leased to someone other than the defendant. Although the defendant claimed that he did not live in the apartment, the defendant was listed as an occupant in the apartment, the defendant admitted that the lessor had moved out and that he was living there by himself, and the defendant's personal items were found in the apartment. The fifth circuit concluded that the state presented sufficient evidence to show that the defendant had been in constructive possession of the items found in his apartment. *Id*.

"[T]he fact that the defendant and the stolen property were both located at the same place at the same time does not indicate that the defendant knew the property was stolen or that the defendant procured, received or concealed the property." *State v. Wilson*, 544 So.2d 1300, 1302 (La.App. 4 Cir. 1989). Here, the only testimony as to how the Suburban came to be in the defendant's back yard was that it "showed up" and had been there for a few days. Further, none of the witnesses testified that they had seen the defendant in possession of the Suburban.

However, in this matter, the State offered evidence that items from the stolen vehicle were in the defendant's home and that the vehicle was in close proximity to the defendant's residence. Several of the items which were in the defendant's home were personal items that had the vehicle owner's name on them, such as his Social Security card. *See Skipper*, 527 So.2d 1171. The State also offered the Jarvises' testimony which indicated that the defendant was in possession of the Suburban. Notably, Mrs. Jarvis' testimony was that the defendant offered more than one explanation about who had loaned him the Suburban and, ultimately, that the defendant admitted to her that the Suburban was stolen. It was the jury's prerogative to accept or reject the witnesses' testimony, and the appellate court may not second guess the rational credibility determinations of the factfinder.

9

Thus, given the evidence offered by the State, the testimony was sufficient for the jury to conclude that the defendant both intentionally possessed the Suburban and knew that it was stolen. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction for illegal possession of stolen things valued $1,500.00 or more.

This assignment of error is without merit.

## DECREE

For the foregoing reasons, the conviction of the defendant, Caleb A. Baxley, for illegal possession of stolen things valued $1,500.00 or more is affirmed. The defendant's sentence is vacated and remanded for resentencing.

**CONVICTION AFFIRMED. SENTENCE VACATED AND REMANDED FOR RESENTENCING.**