# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1266

**STATE OF LOUISIANA**

**VERSUS**

**GREGORY JOHNSON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 02-1553
HONORABLE KEITH R. COMEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Michael G. Sullivan, Judges.

**CONVICTION AFFIRMED; RESTITUTION ORDER AMENDED, AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

**J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA   70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Walter J. Senette, Jr.**
**Assistant District Attorney**
**500 Main Street - 5th Floor**
**Franklin, LA   70538**
**(337) 828-4100**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**R. Michael Moity, Jr.**
**114 W. Washington Street**
**New Iberia, LA   70560**
**(337) 367-7727**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Gregory Johnson**

**Gregory Johnson**
**318 East Street**
**New Iberia, LA 70560**

AMY, Judge.

The defendant, Gregory Johnson, pled *nolo contendre* to one count of theft of items valued in excess of five hundred dollars, in response to the State's allegation that he stole a number of items following his purchase of a piece of property and his subsequent return of the property to the original owner. Following a restitution hearing, the defendant was ordered to pay the victim $12,320.54 for the missing items. The defendant now appeals, asserting his plea was not entered into knowingly and voluntarily because he was not aware that the restitution amount could include all of the items included in the State's original bill of information. He further asserts that if his conviction is upheld, the trial court's order of restitution was improperly imposed and assessed. For the following reasons, we affirm the defendant's conviction; amend the restitution order, and affirm it as amended; and remand with instructions.

**Factual and Procedural Background**

On October 8, 2002, the State of Louisiana filed a bill of information charging the defendant, Gregory Johnson, with eight counts of theft over $500.00, in violation of La.R.S. 14:67[1]. The facts, as presented at the sentencing and restitution hearing, indicate that the defendant and James Dugas were business partners who owned rental properties together. The defendant also owned and operated a day care nursery on the

---

[1]Louisiana Revised Statutes 14:67 states, in pertinent part:

> A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

> B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.

1

lot adjacent to Mr. Dugas' home. Mr. Dugas testified that he sold his home to the defendant on December 30, 1999, due to his pending divorce from his wife. Mr. Dugas testified that he had two appraisals performed on the property, and each valued the property at $250,000.00. Mr. Dugas and his wife executed a credit sale to the defendant and his wife for $250,000.00, with the agreement that the defendant would pay for the interest in installments over a period of two years and thereafter would obtain a mortgage on the home. Mr. Dugas testified that, due to their ongoing friendship, the defendant allowed him to keep various items in the attic and on the property, which contained various outbuildings, including a shed.

The defendant and his wife testified that when they attempted to procure the mortgage, the property was appraised at an amount significantly less than $250,000.00 and they were unable to secure the mortgage. As a result, the parties executed a dation en paiement in which the defendant and his wife returned the house to Mr. Dugas and his wife for forgiveness of the debt. However, Mr. Dugas alleges that when he took possession of the property, numerous items were missing including air conditioning units, appliances, boats, a tractor, tools, and other items the defendant had told Mr. Dugas that he could leave on the property.

Mr. Dugas reported the missing items to the police, and the State charged the defendant by bill of information with eight counts of theft over $500.00[2]. On

_____

[2] The initial bill of information included eight counts, each stating that "DURING THE YEAR 2002, IN THE PARISH OF IBERIA, GREGORY JOHNSON DID KNOWINGLY OR INTENTIONALLY COMMIT R.S. 14:67 THEFT, by the misappropriation or taking of property, to-wit:"

Count #1: . . . one (1) central air conditioning unit, . . .

Count #2: . . . three (3) window air conditioning units, . . .

Count #3: . . . one (1) Ford tractor, . . .

Count #4: . . . one (1) electric range and oven, . . .

Count #5: . . . one (1) # HP Eviinrude [sic] Outboard motor, . . .

2

December 9, 2003, pursuant to a plea agreement, the defendant entered a plea of "no contest" to one count of theft over $500.00. The trial judge fixed a date for a sentencing and restitution hearing, at which he would hear evidence from the State regarding all eight counts for the purposes of determining restitution. The defendant reserved his right "to challenge the amount of restitution and whether or not [he] took some of the . . . items" that he was charged with stealing.

At the restitution hearing, the court heard testimony from the victim and from the defendant and his wife. The defense also presented the testimony of: Ms. Olfia Green, who is the defendant's sister-in-law and worked for the defendant; Ms. Kathy Landry, who worked at the defendant's daycare business and cleaned his house for him; Mr. Robert Deslotte, a friend of the defendant, and; Ms. Tabitha Bourque, who also worked at the defendant's daycare. After the hearing, the trial court disallowed three items from the handwritten list of allegedly stolen items provided by the victim, but found that the defendant had misappropriated all of the other items on the list. The court assessed a value for each item based either on price quotes the victim had obtained from local merchants, or on the amount the victim had already paid to have certain items repaired. The total amount of restitution the defendant was ordered to pay was $12,320.54.

The defendant appeals, alleging the following as error:[3]

---

Count #6: . . . one (1) 12' custom aluminum mud boat, . . .

Count #7: . . . one (1) 14' Ryancraft aluminum boat, . . .

Count #8: . . . various items of movable property, . . .

After listing the item allegedly stolen, each count stated that the item belonged to J.D. Dugas and was valued at an amount equal to or greater than $500.00.

[3] The defendant cites seven assignments of error, as listed above. In the argument section of his brief, however, the defendant limits his argument to whether or not the plea was knowingly and voluntarily entered; whether or not the defendant had the proper mens rea to have committed the crime, and; whether or not the restitution was correctly assessed. Because assigned errors number 4, 5, and 7 have not been briefed, they are therefore deemed abandoned pursuant to Uniform Rules,

1.    Appellant's plea of "no contest" was not made in a constitutionally mandated, intelligent and/or voluntarily manner, as Appellant (as well as his counsel) was under the impression that he would be responsible only for items removed from the property after the signing of the Dation.

2.  The trial court manifestly erred and abused its discretion by ordering restitution to the alleged victim for items disposed of prior to the Appellant's termination of ownership interests.

3.  The trial court manifestly erred and abused its discretion by attributing brand-new replacement values to old, damaged, and/or depreciated items allegedly taken by the Appellant.

4. The trial court manifestly erred and abused its discretion by not sanctioning the alleged victim for his perjury.

5.    The District [A]ttorney's office abused its discretion by seeking criminal action in a civil manner, obviously seeking to target the Appellant.

6. The trial court manifestly erred and abused its discretion as the State failed to prove that the items allegedly taken were removed prior to the Dation.

7. The plea of the Appellant was not intelligently and voluntarily made as originally the District [A]ttorney's office had offered pretrial diversion if the Appellant would pay in excess of $18,000.00 for items that he did not take.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we have found two errors which require correction.

First, the trial court failed to impose a supervision fee as a condition of the defendant's probation. Louisiana Code of Criminal Procedure Article 895(A) provides in pertinent part: "When the court places a defendant on probation, it shall

Courts of Appeal, Rule 2-12.4. Therefore, we limit our analysis to those arguments offered by the defendant in his brief, which have been separated into those which challenge the validity of the defendant's no contest plea and those which challenge the imposition and amount of restitution.

4

require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision[] . . ." Louisiana Code of Criminal Procedure Article 895.1(C) further provides that the supervision fee must be paid monthly and must not be less than $50.00 nor more than $100.00. This court has previously addressed a trial court's failure to impose a supervision fee as a condition of probation. In *State v. Bey*, 03-277 (La.App. 3 Cir. 10/15/03), 857 So.2d 1268, a panel of this court stated:

> When remanding a case for imposition of a supervision fee as a condition of probation, this court has stated:
>
>> The defendant's sentence does not necessarily have to be vacated if the trial court decides to set the minimum monthly supervision fee. *See State v. Harris*, 93-1098 (La.1/5/96); 665 So.2d 1164. In *Harris*, the Louisiana Supreme Court remanded the case and gave the trial court the option of amending the court minutes to reflect the change in sentence without bringing the inmate to court. The court stated that the district judge retains the discretion to vacate the sentence originally imposed and to resentence the inmate in open court. *Harris* allowed ministerial corrections of the record in instances where the trial court failed to impose special restrictions required by law. However, the trial court has some discretion in setting the probation supervision fee, as it can impose a fee between twenty and one hundred dollars per month. Therefore, if the trial court opts to assess the minimum fee required by law, it can correct the sentence in accordance with the procedures set forth in *Harris*. However, if the trial court wishes to set a higher fee, the trial court should vacate defendant's sentence and resentence him in open court. Therefore, although we affirm the defendant's conviction, we must remand the case to the trial court with instructions to set a monthly probation supervision fee to be paid in accordance with article 895.1(C).
>
> *State v. Iles*, 96-256 (La.App. 3 Cir. 11/6/96); 684 So.2d 38 at 40-41.
>
> Likewise, we remand for the trial court to impose and set the amount of a supervision fee. If the trial court sets the amount at the minimum fee, the trial court can correct the sentence by following the procedures set forth in *Harris*. If, however, the trial court wishes to set a higher fee, the sentence must be vacated and the Defendant resentenced in open court.

5

*Bey*, 857 So.2d at 1276-77. Accordingly, we remand the present matter for the trial court to impose a supervision fee as a condition of the defendant's probation. We instruct the trial court to follow the procedure set forth in *Harris* if it chooses to impose the minimum fee. Alternatively, if the trial court chooses to set a higher fee, it must vacate the sentence imposed and resentence the defendant in open court.

Secondly, the trial court failed to inform the defendant of the prescriptive period for filing for post-conviction relief as required by La.Code Crim.P. art. 930.8(C). Accordingly, upon remand, the district court should inform the defendant of the provisions of La.Code Crim.P. art. 930.8(C).

*Validity of No Contest Plea*

The defendant argues in his appellate brief that, "at no time did the Appellant know, suspect, or was advised that he would be responsible to pay for items that were damaged prior to the Dation or items that were disposed of prior to the Dation. Same renders the plea as not being voluntarily and intelligently made and must be withdrawn." The defendant states that his understanding of the proceedings was that "only the items that were unaccounted for post-Dation would/could be included as restitution items." He alleges that both he and his defense counsel were "misled and/or uninformed" because "the court failed to advise the Appellant that he could potentially be responsible for restitution of property damage during the Sale as well as anything unaccounted for by the alleged victim after the Dation."

Generally, a defendant waives the right to question the merits of the State's case or the underlying factual basis by entering a plea of guilt, or plea of *nolo contendere*. *State v. Brooks*, 38,963 (La.App. 2 Cir. 9/22/04), 882 So.2d 724. "When a guilty plea is otherwise voluntary, there is no necessity to ascertain a factual basis for that plea unless the accused protests his innocence or for some other reason the

6

trial court is put on notice that there is a need for such an inquiry. In that event, due process requires a judicial finding of a *significant factual basis* for the defendant's plea." *State v. Linear*, 600 So.2d 113, 115 (La.App. 2 Cir. 1992); *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970). However, this court has held that a plea of *nolo contendre* alone, unlike a guilty plea accompanied by a claim of innocence, does not put the trial court on notice that a significant factual basis must be obtained. *State v. Villarreal*, 99-827 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, *writ denied*, 00-1175 (La. 3/16/01), 786 So.2d 745; *State v. Guffey*, 94-797 (La.App. 3 Cir. 2/1/95), 649 So.2d 1169, *writ denied*, 95-973 (La. 9/22/95), 660 So.2d 469. Citing *Alford*, the Louisiana Supreme Court has stated:

> Moreover, even assuming that relator had protested his innocence when he entered his guilty plea and further assuming that in all cases involving a *bona fide Alford* plea the record "before the judge [must] contain [] strong evidence of actual guilt," the standard under *Alford* is not whether the state may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses, but rather whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea "represents a voluntary and intelligent choice among the alternative[s]."

*State v. Orman*, 97-2089, pp. 1-2 (La. 1/9/98), 704 So.2d 245, 245 (citations omitted).

In the case *sub judice*, the following exchange occurred at the plea hearing during the colloquy between the judge and the defendant:

Q.   Did you understand his [defense counsel's] explanation of what's happening today and what will happen in the future?

A.   Uh, yes, sir.

Q.   Okay. All right. Do you have any questions about any of that?

A.   I guess in reference to the aggregate - I was, I guess maybe I didn't understand that. I thought I was pleading guilty to - I mean no contest to one count of the felony charge, but making it aggregate, I mean is that - well, I ain't never had an opportunity -

Q.   Well -

7

A.   - to discuss that with the attorney.

Q.   There's only, there's only one count of theft, okay? But Mr. Vines can present evidence as to any of the counts for restitution.

A.   Okay.

Q.   Okay?

A.   For restitution.

Q.   If he presents evidence that satisfies me that restitution is due on one, two, five, eight of them -

A.   Okay.

Q.   You understand?

A.   All right.

Q.   Then I, I can order restitution on all of it.

A.   Okay.

Q.   You understand?

A.   I understand.

Q.   But only one count of theft is being pled to.

A.   Okay.

Q.   Okay? Now do you understand?

A.   Yes, sir.

Q.   Okay.

   Mr. Moity, [defense counsel] have you reviewed the plea with the defendant?

MR. MOITY:
   Yes, I have.

THE COURT:
   Do you believe he understands it?

MR. MOITY:

 I do.

. . . .

MR. VINES: [Assistant District Attorney]

 Yes, sir, Judge, the evidence would indicate that between the dates alleged in the Bill of Information on the original bill, the eight separate counts, it would show that Mr. Johnson misappropriated various items of property from Mr. J.D. Dugas, specifically a central air conditioning unit and three window air conditioning units from a house along with an electric range - let me take a look at the bill - which were misappropriated after the, after a Dation of the house was made to Mr. Dugas. Additionally, Your Honor, he misappropriated a Ford tractor, a[n] Evinrude outboard motor, a twelve foot truck, an aluminum boat, a fourteen foot Ryan Craft aluminum boat and various items of movable property, tools and various items of movable property that were located under a shed on that same named property. Those items were taken by Mr. Johnson with the knowledge that they did not belong to him, that they in fact belonged to Mr. Dugas and he misappropriated those items with the intent to criminally deprive Mr. Dugas of those items.

THE COURT:

Q. That's what the State says it can prove, Mr. Johnson. Is that substantially correct?

 . . . .

DEFENDANT JOHNSON:

 I guess my question is can I - to your question if I answer "no" to that question I'm also, making the No contest plea, but I, I can't answer that question in good faith being yes with the things that he's saying, all the things he's saying -

THE COURT:

Q. You don't agree with everything.

A. That's correct.

Q. Some of the things you do agree with?

A. That's correct.

Q. Okay. And those things that you do agree with would amount to over five hundred dollars.

A. That's correct.

9

Q. Okay. Then there's sufficient basis for which to render a "No Contest" plea. The Court finds that these facts are sufficient evidence on which to base a plea of guilty. The Court accepts the guilty plea and finds that it was freely and voluntarily made. Understand you want to reserve your right basically to challenge the amount of restitution and whether or not you took some of the-

A. That's correct.

Q. - items that were referred to by Mr. Vines.

A. That's correct.

Q. Okay. But you do admit that, as a matter of law, that you did take certain items from Mr. Dugas the value of which would exceed five hundred dollars?

A. Yes, sir.

Q. Okay. All right. I find that the plea has been made freely and voluntarily without coercion and that there is sufficient evidence on which to base a plea of guilty.

Based on this exchange, it is clear that, in addition to pleading no contest, the defendant admitted taking items whose value exceeded five hundred dollars. In *State v. Francis*, 02-862 (La.App. 3 Cir. 12/11/02), 832 So.2d 1225, *writ denied*, 03-149 (La. 5/2/03), 842 So.2d 1099, this court considered a defendant's request for *Alford* protections in connection with his guilty plea. Unlike *Alford*, Francis did not proclaim an express declaration of innocence, but instead he "assert[ed] that he admitted no fact which would support a conviction[.]" *Id.* at 1228. Considering that important distinction, this court held that the purported *Alford* plea was actually the equivalent of a *nolo contendre* plea, which "reliev[ed] the trial court of the burden to resolve the conflict between a waiver of trial and a claim of innocence." *Id.* Similarly, the defendant in the instant matter has not made a claim of innocence. Instead, the defendant herein actually admitted guilt to the trial judge during the colloquy accompanying his no contest plea.

10

This court considered a similar argument by a defendant who alleged that despite his *nolo contendre* plea, he had not admitted guilt and thus, the trial court was put on notice that he was entitled to an evidentiary hearing to establish a significant factual basis. *Guffey*, 649 So.2d 1169. We stated that, although the defendant had not actually admitted guilt, "a plea of nolo contendre is tantamount to an admission of guilt." *Id.* at 1174 (quoting *La. State Bar Ass'n v. O'Halloran*, 412 So.2d 523, 525 (La.1982)). We noted that, during the Boykinization proceedings, the defendant did not proclaim his innocence and even answered affirmatively when the trial judge mistakenly asked him if he was entering his guilty (instead of *nolo contendre*) plea of his own free will. *Id.*

In the present case, the defendant actually did admit guilt, stating that he took items which were valued at more than five hundred dollars from the victim. Further, as seen in the colloquy excerpt above, the trial judge stated twice that there was "sufficient evidence on which to base a plea of *guilty*[,]" (emphasis added), despite the defendant's entry of a *nolo contendre* plea. After reviewing the record, it is clear to us that the defendant was aware that he was entering a plea of *nolo contendre*, and that he admitted guilt with regard to the charge of theft.

The defendant's argument on appeal indicates that he would not have entered his plea had he known that the amount of his restitution could potentially include the amounts for all of the items that were contained in the original eight theft counts. Thus, he alleges that his plea was not a knowing and voluntary waiver of his due process rights, because he was not apprised of the maximum penalty exposure. *See State v. Williams*, 554 So.2d 139 (La.App. 2 Cir. 1989). However, our review of the record, and specifically the colloquy excerpt above, indicates that the trial judge took great effort in clarifying the consequences of the plea to the defendant. When the

defendant asked what "making it [the felony charge] aggregate" meant, the trial judge explained that evidence could be presented by the State for any or all of the original counts and he "could order restitution on all of it." The defendant then stated that he understood the explanation. The trial judge further stated that, in accepting the no contest plea, he was allowing the defendant "to reserve [his] right basically to challenge the amount of restitution and whether or not [the defendant] took some of the . . . items[.]" The defendant stated, "[t]hat's correct." Based on this, we find that the defendant received a thorough explanation of the nature of the charges and restitution from the trial judge. Further, the defendant was given ample opportunity to request clarification if he still did not understand the consequences of the plea, but instead he averred that he understood the explanation.

We conclude, therefore, that the trial court was not put on notice that the significant factual basis required for an *Alford* plea was required, nor that the defendant misunderstood the nature and consequences of his no contest plea. To the contrary, the trial court clearly explained that, although the defendant would be given an opportunity to challenge certain items, if the State presented sufficient evidence, restitution would be ordered for all stolen items alleged in the original eight counts. This assignment is without merit.

*Imposition and Valuation of Restitution*

For his next assignments, the defendant asserts that the State did not meet its burden that restitution was due from the defendant for each item and that the trial court abused its discretion when it assigned replacement value to the items instead of the actual value as provided in La.Code Crim.P. art. 895.1.

With regard to restitution, La.Code Crim.P. art. 895(A)(7) (emphasis added) provides, in pertinent part:

12

A. When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:

. . . .

(7) Make *reasonable reparation or restitution* to the aggrieved party for damage or loss caused by his offense in an amount to be determined by the court[.]

Furthermore, Article 883.2 (emphasis added) provides:

In all cases in which the court finds *an actual pecuniary loss* to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.

Louisiana Code of Criminal Procedure Article 895.1(A)(1) (emphasis added) also provides:

When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, *any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain.* However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.

Finally, La.Code Crim.P. art. 895.1(B)(5) provides:

B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:

. . . .

(5) To the victim to compensate him for his loss and inconvenience. Such an amount may be in addition to any amounts ordered to be paid by the defendant under Paragraph A herein.

A trial court has wide discretion in sentencing decisions, including the imposition of restitution. *State v. Blanchard*, 03-612 (La. App. 5 Cir. 11/12/03), 861 So.2d 657. In *State v. Reynolds*, 99-1874 (La.App. 3 Cir. 6/7/00), 772 So.2d 128, this court stated that, absent an abuse of discretion, the trial court's restitution order should not be disturbed. Considering a case where an employer's allegation as to the amount of funds misappropriated varied greatly from the amount admitted by the defendant employee, the second circuit said, "[i]n cases such as this, we note that restitution cannot always be determined with exactitude. For this reason, the trial court is given discretion in determining the amount of restitution appropriate under the particular circumstances of a given case." *State v. McDonald*, 33,356, p. 5 (La.App. 2 Cir. 6/21/00), 766 So.2d 591, 594. In determining the appropriate amount of restitution, a panel of this court has stated:

> [T]he trier of fact is to consider the value that the stolen items have to the victim. *See State v. Harris*, 97-778 (La.3/4/98); 708 So.2d 387. "Unless it is shown the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its *weight* being left to the *jury*." *State v. Stack*, 97-1176, p. 7 (La.App. 5 Cir. 4/15/98); 710 So.2d 841, 844 (quoting *State v. McCray*, 305 So.2d 433, 435 (La.1974)).

*State v. Carthan*, 99-512, p. 7 (La.App. 3 Cir. 12/8/99), 765 So.2d 357, 362 (emphasis in original), *writ denied*, 00-359 (La. 1/12/01), 778 So.2d 547. Further, the owner of stolen property may testify regarding the value of the stolen items without the necessity of being qualified as an expert, and such testimony "can constitute ample evidence of the property's value." *State v. Davis*, 569 So.2d 131, 135 (La.App. 5 Cir. 1990).

In the case *sub judice*, the victim submitted replacement values for many of the stolen items, which he obtained by taking descriptions of the items to various merchants. The trial court ordered the defendant to pay restitution for all of the items

14

that the victim alleged were stolen, with three exceptions. The trial court disallowed restitution for window air conditioning units and a water distiller, based on testimony by defense witnesses at the restitution hearing that the items were removed from the house by Mr. Dugas prior to the dation[4]. The trial court also disallowed restitution for a fourteen-foot RyanCraft aluminum boat, valued at $100.00, based on testimony that it had rusted and developed holes.

The defendant alleges that an order of any restitution for many of the items is improper. In the alternative, the defendant argues that even where restitution was ordered, the amount should have been set at a value equal to the item as it existed, instead of the value for a replacement item. In the interest of clarity, we have separated the items into categories, and will address each item individually within its category.

Items that were attached to the property

The trial court ordered the defendant to pay restitution for all other items other than the window air conditioning units, the water distiller, and the fourteen-foot RyanCraft aluminum boat. With regard to the items for which restitution was ordered, the court explained:

> The description of the property conveyed by Mr. Dugas to Mr. Johnson and the description of the property conveyed back to Mr. Dugas are essentially the same. So therefore, even if Mr. Dugas had conveyed some of the property located in the shed to Mr. Johnson, Mr. Johnson conveyed it back to Mr. Dugas. Therefore, that property should have been returned to Mr. Dugas, even if the defendant is correct in saying that he owned the property once the credit sale was made. Because he did agree to convey back the same identical property, the Court finds that the property should have been conveyed back in Mr. Johnson's claim.
>
> However, the Court doesn't find that to be the facts. The court finds that the negotiated property was in fact the real estate. The Court

---

[4] Mr. Dugas submitted a replacement value for the window air conditioning units of $489.91 plus tax, and a value of $643.00 for the water distiller.

finds, also, that Mr. Dugas and Mr. Johnson did agree that Mr. Dugas would be able to store certain items on the property pending the financing with the bank and the fact that Mr. Dugas and Mr. Johnson were in business together on various other ventures.

. . . .

. . . The Court believes that Mr. Dugas and the State have prepared and proven that Mr. Johnson did in fact convert these items. Mr. Johnson, by his own admission, indicated he sent a letter to Mr. Dugas and ordered Mr. Dugas to pick these things up contrary to the agreement that they had.

Mr. Dugas claimed that the defendant misappropriated a central air conditioning unit after the dation. The victim further stated that, only after the two men met with the sheriff, the defendant returned the unit, which was missing the evaporator coil. The air conditioner was not operational without the evaporator coil, and Mr. Dugas paid $2,148.76 to have the unit repaired and reinstalled in the house. The defendant, however, testified that while he was living in the house, the air conditioning unit stopped working when the coil at the top of the unit caught fire. He acknowledged that the air conditioning unit was removed after the dation, but stated that the damage occurred prior to the dation and the unit was in the process of being removed when the dation was signed. The defendant further stated that he and his wife had possession of the house for ninety days after the dation. The defendant's wife testified similarly, and Ms. Green also stated that the air conditioner had caught fire before the dation.

Additionally, at the time Mr. Dugas sold the house to the defendant, the house contained an electric range. Mr. Dugas admitted that the range was sold with the house in the credit sale. Mr. Dugas testified that when he regained possession of the house after the dation, the range was not in the house. Mr. Dugas stated that the stove was returned by the defendant, along with the air conditioning unit, but that it was also not in working condition. He stated that he received an estimate of $1,149.95,

16

plus tax, to replace the range. With regard to the range, the defendant stated that the stove top was damaged approximately eight or nine months prior to the dation. The defendant, his wife, and Ms. Green each testified that the Johnsons had hosted a foreign exchange student who accidently dropped a pot onto the glass stove top and broke it. Kathy Landry testified that the stove in the defendant's home was broken after the defendant and his wife moved into the home. Robert Deslotte and Tabitha Bourque both testified that the range was broken before the defendant moved out of the house.

With regard to both the air conditioning unit and the stove, the defendant testified that he returned both items after speaking with Detective Scott Hottard. According to the defendant, Detective Hottard told him that he did not believe that he had any intent to take the items and should bring the items back; he said that Detective Hottard also informed the defendant that no charges would be pressed if the defendant returned the items.

Mr. Dugas testified that a telephone pole with a dusk-to-dawn light was also on the property when it was sold to the defendant and missing when the property was returned to him. An estimate of $265.00 was entered into evidence as the replacement value of the pole and light.

Mr. Dugas stated that he had four solar screens installed on the house, which were meant to block out the sun from coming into the house. He testified that the screens were attached, and in good condition when the house was sold, but were missing when he received the house after the dation. A quote for the replacement for the four solar screens was entered into evidence at $138.45.

Finally, Mr. Dugas also testified that, when he sold the house to the defendant, there was a large painting hanging in the house. He stated that the painting was

screwed to the wall. Mr. Dugas testified that the painting was a part of the house and was sold with the house, but that he thought that the painting would be given back in the dation. Mr. Dugas stated that he had bought the painting approximately thirty years earlier for eight hundred dollars. He stated that, although he would rather have the painting returned to him, he would assign the amount of eight hundred dollars to the painting.

The credit sale executed by the parties describes the property conveyed, in pertinent part, as "[t]hat certain parcel or tract of land, together with all buildings and improvements thereon[] . . ." The sale makes no specific reference to any of the items that the victim alleges were misappropriated by the defendant. The dation also does not reference the items, describing the property being transferred with a legal description substantially similar to that in the credit sale. Thus, both the sale and the dation applied only to the land with all buildings and improvements thereon. We find that the items listed above, specifically: the central air conditioning unit, the range, the telephone pole with affixed light, the painting, and the solar screens, were all included in the credit sale from Mr. Dugas to the defendant. With the exception of the painting, the testimony suggested that each of the items was attached to the house at the time of the credit sale. *See e.g.* La.Civ.Code art. 466[5]. As such, the items were sold to the defendant along with the house. Consequently, the items belonged to the defendant and would not be subject to an order of restitution.

---

[5] Louisiana Civil Code Article 466 is titled "Component parts of buildings or other constructions[,]" and states:

> Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.

> Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.

Regarding the painting, Mr. Dugas stated that the painting was "screwed to the wall," but it is unclear whether the painting was attached to the wall in such a way to render it a component part of the house. However, in his testimony at the restitution hearing, Mr. Dugas testified specifically that he understood that the painting had been sold as "part of the house[.]" Although he also stated that he believed he would receive the painting back in the dation, we note that the painting is not addressed in the dation.

Due to their status as component parts, we conclude that the trial court abused its discretion in ordering the defendant to pay restitution on these items, specifically: the central air conditioning unit, the range, the telephone pole with affixed light, the painting and the solar screens, which the defendant had purchased with the property in the credit sale. The defendant's ownership of the items, then, would preclude an order of restitution for the theft of those items. Accordingly, we remove the value of this property from the amount of restitution ordered.

Items not attached to the property

Mr. Dugas testified that there were various items of movable property that he had permission from the defendant to leave on the property after the credit sale. He stated that the agreement was that the items were not actually conveyed to the defendant in the credit sale. The defendant testified that he had sent Mr. Dugas a letter telling him to remove any items he believed belonged to him, or else the defendant would consider them abandoned. The defendant also offered other explanations regarding the whereabouts of the items. First, the defendant, as well as his wife and other witnesses, testified that numerous people had access to the shed where most of the items were kept, including the victim himself and employees of both the victim and the defendant. The defendant's wife testified that some of the

items may have been disposed of when she and her husband cleaned the property shortly after the credit sale. She stated that the victim was present when the yard was cleaned and knew which items where thrown away. Finally, the defendant suggested that some of the items were not even present on the property when he took possession of it. He testified that he had seen Mr. Dugas' divorce papers and that the list of items that Mr. Dugas claimed were missing in the instant matter was the same list that he had compiled during his divorce, and that the items were not present at the house when he moved in. Regardless of each of these explanations, both the defendant and his wife testified that, with the exception of the tractor and a few personal items, they were under the impression that when they purchased the property, they were purchasing everything on the property.

The remainder of the testimony regarding the various other items of movable property, for the most part, consisted of Mr. Dugas' assertion that he had left the items on the premises after the credit sale with the understanding that he would retain ownership of them. He also offered price quotes for the replacement of each of the items, which had been obtained by taking a description of the item to a local vendor. The items in question and amounts awarded by the trial court are as follows:

| | | |
|---|---|---|
| 1. | Three-horsepower Evinrude boat motor | $ 99.58 |
| 2. | 14' custom made aluminum inboard mud boat | $ 2,000.00 |
| 3. | 12' plywood pirogue | $ 200.00 |
| 4. | 5' plywood flat bottom hull boat | $ 100.00 |
| 5. | Boat anchor and chain | $ 25.00 |
| 6. | Various tools and household items | $ 1,379.25 |
| 7. | 2 large iron cooking pots | $ 140.00 |
| 8. | 7' spike harrow | $ 588.80 |

9. Truck camper top                                           $ 1,019.15

10. Bench grinder                                             $   100.00

11. 3 tree saws                                               $    90.00

12. Burner wand                                               $    30.00

13. Various hand tools                                        $   500.00

14. Lumber - had been stored on the property                 $   400.00

15. F600 Ford tractor                                        $ 1,147.85

We need not discuss each item individually, as much of the testimony submitted for the items is substantially similar and the evidence is provided entirely by the victim. The victim stated that most the items were kept in a work shed or in storage and that he had not moved them because he did not have room for them after he left the property. Thus, the victim was not able to offer significant evidence beyond his testimony regarding the existence and condition of many of the items listed above. In weighing the evidence and testimony that was presented, the trial court was in the best position to assess the memory of each witness and to determine each witness's overall credibility.

The transcript of the restitution hearing reflects numerous instances in which the condition, or even existence, of certain items is disputed by the defendant and the victim. Often, either or both of the parties were not able to offer any evidence beyond his own assertion as to the whereabouts of the item at a given point in time. The trial court heard all of the testimony and determined that the defendant had misappropriated each of the items above. The trial judge accepted evidence which the victim had obtained from third parties regarding valuation of the items and assessed those amounts, as listed above, as restitution to the defendant. We do not find that the trial court abused its discretion in finding that the defendant had

misappropriated the items or in the valuation amounts of the items. Although many of the amounts assessed by the trial court are replacement values, it was within the trial court's discretion to choose an appropriate amount. Despite this conclusion, certain items listed above merit specific discussion and separate findings.

Mr. Dugas testified with regard to the three horsepower Evinrude boat motor, which he stated that he had owned for about thirty-five years and left on the property. The defendant testified that he had no idea what happened to the motor, but that many people had access to the shed where Mr. Dugas said it was kept. Both Ms. Green and Mr. Deslotte testified that they had seen a small motor on the property, but did not know what had become of it.

Based on the testimony, the motor was on the property while the defendant inhabited the house and was gone when Mr. Dugas regained possession of the property. We do not find that the trial court abused its discretion in finding that the defendant misappropriated the motor and ordering restitution for it. However, in determining the proper amount of restitution, the trial court considered an October 19, 1989 receipt in the amount of $99.58 entered into evidence by the State. Our review of the receipt indicates that it contains charges for work performed on a three horsepower motor, an eighteen horsepower motor, and a two-by-four. The total amount for the work performed on the three horsepower motor is only $31.95 plus tax. That amount, then, does not represent the value of the motor, only the amount due for service performed in that instance. The record also contains a price quote, which affixes a value of $100.00 to a three horsepower Evinrude motor. The trial court accepted values for other items listed on the quote from that merchant, but appears to have inadvertently applied the value from the work receipt, instead of the quoted value. Nevertheless, we find that the trial court's order that the defendant pay

22

$99.58 in restitution for the misappropriation of the three horsepower Evinrude boat motor is within the $100.00 figure supported by the record. We therefore find no adjustment to the restitution order necessary in this regard.

Mr. Dugas also testified that he owned a 1965 F600 Ford tractor, which he left on the property that the defendant purchased. Mr. Dugas stated that the tractor was his, that he did not give the tractor to the defendant, and that the defendant knew that the tractor belonged to him. After the property was transferred to Mr. Dugas, the tractor was not there. It was later found in the possession of the defendant. Mr. Dugas stated that the tractor was in good operating condition before it was taken and that he used the tractor often. When the tractor was recovered, it required repairs costing $1,147.85. Mr. Dugas stated that the tractor was thirty years old and that he had to have the engine overhauled when the tractor was returned to him. The defendant stated that he knew that the tractor belonged to Mr. Dugas, but thought that Mr. Dugas did not have a right to the tractor after he sent the letter informing Mr. Dugas to remove the tractor from the property. Because the record does not contain a copy of the letter, the only description of its details was provided by the defendant himself. Although Mr. Dugas admitted that he may have received that letter, he also stated that he did not recall whether or not he had.

Thus, according to the record, the defendant admitted to removing the tractor from the property and offered no evidence to support his assertion that he sent a letter before doing so. We find that the trial court did not abuse its discretion in finding that the defendant did misappropriate the tractor with the intent to permanently deprive the owner, and thus, restitution in the amount of $1,147.85 is proper.

The defendant was ordered to pay $25.00 in restitution for a boat anchor and chain, which was listed in Court Exhibit 2. As stated, the testimony of the victim is

23

sufficient to establish restitution. *See Davis*, 569 So.2d 131. Although an anchor and chain were included within one of the valuation lists submitted by the State, Mr. Dugas did not testify that an anchor and chain were left on the premises. Without any testimony regarding this item, we find that the State did not present sufficient evidence at the restitution hearing to establish that an anchor and chain were left on the property after the credit sale. Thus, the trial court abused its discretion in ordering the defendant to pay $25.00 in restitution for the anchor and chain.

Finally, we consider the varying testimony considering the boats that Mr. Dugas alleged were on the property. Mr. Dugas testified that he left a fourteen foot RyanCraft aluminum boat, a custom-made aluminum boat, a twelve-foot plywood pirogue and a five-foot plywood flat-bottom hull boat on the property when he sold the house to the defendant. Mr. Dugas further testified that the defendant allowed him to leave the boats on the property after the credit sale. The State entered into evidence a handwritten estimate on all four boats, which valued the boats as listed above. The defendant testified that when he acquired the property there was one aluminum boat in the yard, but it had holes in it and plants and trees growing in it. The defendant also testified that there was a plywood pirogue in the shop, but that the boat was rotten. He stated that he did not know what happened to the aluminum boat, but that he had given the wooden boat to Mr. Deslotte. The defendant stated that both boats were gone before the dation was signed.

Ms. Landry testified that she remembered an aluminum boat being in the yard, but the boat was rusty and had flower pots in it. She further testified that she had never seen a wooden boat in the yard. Mr. Deslotte testified that he remembered a fourteen foot aluminum "jon boat" in the yard. He stated that the boat was full of trash and looked like it may have been used as "a pottery or something." He stated

24

that he had no idea what happened to the aluminum boat. Mr. Deslotte further stated that there was a wooden pirogue in the yard, but that it had a big hole in the middle and was rotten. He stated that the pirogue was thrown away.

The trial court ordered restitution for three of the four boats, but disallowed restitution for the fourteen-foot aluminum boat valued at $100.00, based on the testimony of Ms. Green that the boat was rusted and had holes in it. Although defense testimony was offered indicating that all of the boats that had been seen on the property were in some state of disrepair, the trial court appears to have accepted the testimony of Mr. Dugas and Ms. Green. Because the trial court was in the best position to assess the credibility of the witnesses, we do not find that the trial court abused its discretion in ordering the defendant to pay $2,300.00 in restitution for the three boats and disallowing restitution for the fourteen-foot aluminum boat.

In sum, we conclude that the trial court did not abuse its discretion in ordering the defendant to pay restitution in the amounts listed above, with the exception of the anchor and chain. The proper amount of restitution due on these items is $7,793.83.

### DECREE

For the foregoing reasons, Gregory Johnson's conviction for one count of theft of items valued in excess of five hundred dollars is affirmed. However, the amount of restitution Mr. Johnson was ordered to pay is affirmed in part and amended. He is ordered to pay $7,793.83 in restitution on the items as listed above. We remand, with instructions to the trial court to impose a supervision fee as a condition of the defendant's probation and to inform the defendant of the provisions of La.Code Crim.P. art. 930.8.

**CONVICTION AFFIRMED; RESTITUTION ORDER AMENDED, AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**