# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1029

**STATE IN THE INTEREST OF**

**K. Z.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2015-384 J2
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED AS AMENDED;
REMANDED WITH INSTRUCTIONS.**

**Keith A. Stutes**
**District Attorney, Fifteenth Judicial District**
**Christine B. Roberts**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR:**
    **State of Louisiana**

**Jane Hogan**
**Public Defender, Fifteenth Judicial District**
**P.O. Box 3622**
**Lafayette, LA 70502**
**(337) 232-9345**
**COUNSEL FOR APPELLANT:**
    **K. Z.**

**GREMILLION, Judge.**

On January 31, 2015, the Juvenile, K.Z.,[1] used a Ford truck owned by Minor Domingue without his consent and with the intention of permanently depriving Domingue of the vehicle.

On April 15, 2015, the State filed a petition seeking to have the Juvenile adjudicated delinquent on the grounds that he allegedly committed the offenses of unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4, and resisting an officer, a violation of La.R.S. 14:108.[2] The Juvenile initially denied the allegations on April 29, 2015. Then, on May 21, 2015, the Juvenile appeared in court to enter an admission. However, the matter was set for an adjudication hearing when the Juvenile's mother expressed disagreement with the State's recitation of the facts. On July 16, 2015, the Juvenile entered an admission to the charge of unauthorized use of a motor vehicle. The companion charge of resisting arrest was dismissed. The court ordered the Juvenile to serve eighteen months with the Department of Youth Services, which it suspended. The Juvenile was ordered to serve eighteen months of active supervised probation subject to conditions. The juvenile court scheduled a restitution hearing for August 26, 2015. At that hearing, the Juvenile was ordered to pay restitution to the victim in the amount of $3,200.21 at a rate of $200.00 per month for sixteen months commencing on September 1, 2015. The Juvenile objected and is before this court challenging the restitution order.

---

[1]Initials of the Juvenile are used to protect his identity as required by Uniform Rules— Courts of Appeal, Rule 5-2.

[2] Although not raised on appeal, we note an error patent in the record. The Juvenile was charged with unauthorized use of a motor vehicle, however, several times in the record that charge is incorrectly referred to as unauthorized use of a movable. We find this error harmless.

The record before this court does not indicate that the juvenile court gave the Juvenile credit for time spent in secure detention, if any, prior to the imposition of disposition, as required by La.Ch.Code art. 900. *See State in the Interest of J.F.*, 03-321 (La.App. 3 Cir. 8/6/03), 851 So.2d 1282. Accordingly, we will amend the Juvenile's disposition to give him credit for time served in a secure detention facility before the imposition of disposition, if any, and instruct the juvenile court to note the amendment in the written disposition and in the minute entry. *See State ex rel. M.M.*, 06-607 (La.App. 3 Cir. 11/2/06), 941 So.2d 716.

## ASSIGNMENT OF ERROR NUMBER ONE

The Juvenile argues that the juvenile court erred in ordering him to pay restitution for items allegedly stolen from Domingue's truck, despite a lack of documentation as to their existence and cost. Further, the Juvenile notes that the police reports did not allege that he committed a theft of the items from the truck, nor was he charged with theft.

Louisiana Children's Code Article 897(B)(2)(c) allows the court to impose as a condition of probation "[a] requirement that the child make reasonable restitution to any victim for any personal or property damage caused by the child in the commission of the delinquent act." The "Plea Agreement" section of the admission form reflects that a "restitution hearing [is] to be set on August 26, 2014."[3] At the July 16, 2015 admission proceeding, the court indicated that restitution would be imposed and that a hearing was set for August 26, 2015.

Domingue testified at the August 26, 2015 restitution hearing. Domingue's truck, which was being driven by his son to and from college, was "stolen from a

---

[3]The erroneous year is clearly a typographical error because the admission was entered in 2015.

2

friend's house." When the truck was recovered, the tires were blown out, and the body of the truck was damaged. Based on the insurance adjustment, the damage and towing totaled $3,474.92. The insurance company paid Domingue $1,392.86.

In addition to the damage to the truck, Domingue testified that there were various items taken from the truck. Domingue obtained replacement values online for the missing items including: a Garmin GPS ($199.00), a Drake waterfowl jacket ($260.00), jumper cables ($25.00), a Bluetooth adapter for the stereo ($29.15), a pair of Ray-Ban sunglasses ($129.00), a garage door opener ($30.00), truck registration ($14.00), blue jeans, sweatpants, work-out shorts, shirts, socks, underwear, and bath towels ($500.00). These items totaled $1,181.15. On cross-examination, Domingue testified that receipts had not been retained for these items, but that if he replaced the items, he could provide receipts. According to the court's calculations, verified by Domingue, the out-of-pocket expenses for the truck and the missing items was $3,263.21.

Domingue testified that the GPS, jumper cables, and garage door opener were used, but in good working order. The hunting jacket and the Bluetooth adapter were approximately one year old. The sunglasses were fairly new, and the clothes and towels were approximately six months old. Domingue testified that he arrived at the towing garage before the tow truck. Upon noticing that items were missing from the truck, he asked the man towing the truck about the items.[4] He was told no items had been removed. The following week, Domingue checked with a deputy about the missing items. The deputy checked the evidence room and confirmed the items were not there.

---

[4]Domingue testified that he also asked the "deputy at the towing department" about these missing items.

At the restitution hearing, the Juvenile denied damaging the truck or taking the missing items. At the time of the hearing, the Juvenile was fifteen years old and had no job except for an occasional lawn-mowing job for which he was paid about $20.00. From the testimony, it was unclear how often the Juvenile mowed lawns. When asked if he had any potential lawn-mowing jobs for the summer, the Juvenile responded that he had two or three people, but he was vague as to the number of times he could mow their lawns. He also testified that he lives in a neighborhood and his next door neighbor agreed to pay him $10.00 a month to mow their grass year-round. The Juvenile testified that he has his own mower and affirmed that he was guaranteed $120.00 a year from the neighbor "if [he] could get some gas to cut their grass." According to the Juvenile, he gets no allowance and has no inheritance or any other source of income. When questioned if he had asked around the neighborhood for more yards to mow, the Juvenile replied, "No. Not really," but he agreed he had the ability to do so. He also acknowledged that he had all of the items needed to wash cars, but he testified that he has not pursued that. The Juvenile was also asked if had ever picked up aluminum cans to sell; he replied, "I don't do that." However, he acknowledged that he was a healthy fifteen year old kid.

When the Juvenile was asked about his ability to get a job, he testified he was waiting until he turned sixteen, which will be in June 2016. Counsel asked the Juvenile whether he had ever tried refereeing, as that does not have an age requirement of sixteen. The Juvenile responded that he had not, but that he was unaware that was a possibility before age sixteen.

On cross-examination, the Juvenile testified that he did nothing over the past summer. When asked if he sat around his house all day, the Juvenile replied, "I

just be chilling" and playing PS4 (PlayStation 4). He also testified that he occasionally shoots basketball at the park.

In arriving at the amount of restitution owed, the court depreciated the value of the jacket by $60.00 and set the amount of restitution at $3,200.21.[5] Payments in the amount of $200.00 were to be made for sixteen months commencing September 1, 2015. In assessing this amount, the juvenile court noted that the Juvenile has the ability to cut grass and there was nothing that he testified to that would prevent him from working. The court noted that the Juvenile has his own lawn mower, cell phone, and PS4, with the cell phone and PS4 being worth a lot of money.[6] The Juvenile and his mother responded that the PS4 was not his. His mother further explained that the cell phone and the bill were "not for him and it's not his bill."

On appeal, the Juvenile notes that he was never charged with, nor did he admit to, taking the property from the truck. Additionally, he contends that it was improper to impose restitution with no proof of the existence of the missing items and their costs. The Juvenile alleges that prior to the restitution hearing, he did not know he would be held responsible for the stolen items. Although the Juvenile suggests that these circumstances may render his plea involuntary, he does not specifically ask for his plea to be set aside and concludes his brief with a request that the restitution order be vacated.[7]

---

[5]At the close of testimony, the court commented that it was "unimpressed with [the Juvenile's] disposition, demeanor, and respect for the Court." The court observed that when the Juvenile was asked to give a verbal answer, the look on his face was one of disinterest and disgust.

[6]The Juvenile testified that he had a cell phone, but that it was "off" (presumably deactivated).

[7]The Juvenile's brief states in pertinent part:

In support of his contention that restitution awards must be based on more than allegations and estimations, the Juvenile cites *State v. Puzzio*, 08-484 (La.App. 5 Cir. 11/12/08), 1 So.3d 540. In *Puzzio*, the defendant argued on appeal that it was improper to order him to pay restitution for items other than those listed in the police report when his plea bargain was based on an understanding that he would pay restitution only as to the property documented in the report. On appeal, the court found the record supported the argument that the intention of the parties was to limit restitution to the value of items pawned by the defendant, as referenced in the police report. The Juvenile in the instant case contends that when he entered his guilty plea, he was not admitting to stealing $1,181.15 in personal property. Absent evidence that he actually took these items, he claims he cannot be held responsible for their loss.

*Puzzio* is distinguishable in that the record in this case does not support the argument that the parties intended to limit restitution to any particular amount or to cover any particular items or damage. More on point is *State in the Interest of D.B.*, 13-1364 (La.App. 3 Cir. 4/23/14), 137 So.3d 1282, *writ denied*, 14-1092 (La.

---

Both on the plea form and in the transcript, the restitution hearing is said to be set for 2014. Clearly the incorrect date was a typo and an omission. However, when it comes to a young child entering into a plea agreement, the vagueness and imprecision of mentioning that an additional hearing will occur in August 2014 could directly impact whether such plea was, in fact, knowing and voluntary. K.Z. entered an admission to one count of unauthorized use of a moveable [sic]. It is logical that had he understood he owed restitution for this offense, he would understand the restitution to be limited to damage caused to the vehicle by K.Z.'s unauthorized use.

. . . .

. . . Had K.Z. been informed that he would owe $1,181.15 for stolen items from a truck, he would not have entered into a plea agreement with the State and would have gone to trial in order to establish his narrow role in the offense.

6

1/9/15), 157 So.3d 596. In *D.B.*, the juvenile entered an admission to unauthorized use of a movable. The trial court ordered him to pay restitution for the tools taken from the truck, even though he had not been charged with theft, and the items had not been listed in the police report. He argued on appeal that the imposition of restitution was improper because there was no evidence that he was responsible for the theft of the tools or even that the tools had been stolen. Further, he claimed the only evidence of loss presented was a list and receipts by the victim without any prior notice to the defense. This court concluded that restitution was properly ordered under facts very similar to those in this case:

> Trahan subsequently testified that a lot of hand tools and power tools were taken from this truck, and the total was $1,552.73. When asked to enumerate what was taken, Trahan stated, "[a] lot of hand tools." Trahan was then asked to read from "the list" and told, "[i]f you have to read every single one, that's fine." Trahan then testified that the following items had been taken:
>
> > [s]crewdriver, nut driver, torque wrench, plyers, needle nose, Lyman plyers, nail set, a couple of felt knives, vice grip, a wrench—two (2) or three (3) wrenches. Let's see, line strippers, wire strippers, Dewalt set—power tool Dewalt set, which is six hundred dollars ($600) by itself, a tool box, some tape—some duct tape, other different types of screwdrivers, wrenches, more wrenches and—[.]
>
> Trahan said that the tools were kept inside his truck and were there the night the truck was taken. Trahan testified that he purchased some tools recently because he needed them to make repairs, and his insurance did not cover the loss. He further testified that he arrived at the total of $1,552.73 by adding the figures on the various receipts he had presented. The receipts presented were for purchases on several different occasions. Trahan said that he bought what he needed first, and, when he realized he needed more, he purchased a "whole bunch." Trahan further testified, "[w]ell, I acquired all those tools over the years. I didn't realize what I had, until I needed it. I didn't make a list of everything." He continued, "I had to just buy what I thought at first and then come back." Trahan was then questioned as follows:
>
> > Q . . . But you don't actually know what it was that you were missing, because you don't have any documentation of the tools that were actually stolen?

A You know--Yes, in a way I don't, but I do have that--I know if I need it, which I had before, I go look for it and I don't have it, I knew I had it before.

Q But you could have bought something on this list that you didn't have before?

A If it is, it might be one (1) or two (2), but I really--

Q Might be one (1) or two (2). So there might be something on here that you didn't lose before?

A Could be, but I really doubt it. Because I had everything. I had a lot. Fifteen hundred is nothing.

Trahan then testified that his tools were old.

The Juvenile testified that he was fourteen years old and lived with his aunt. The Juvenile indicated that he did not have a job and had no money; however, he had cut grass for ten to fifteen dollars a yard when he needed money.

After hearing the testimony of Trahan and the Juvenile and the arguments of counsel, the trial court asked if the Juvenile's probation would be for a period of one year. The State answered affirmatively. The trial court then stated, "[t]hat reduces the amount of available funds." The trial court then inquired as to the date probation would be terminated and ordered the Juvenile to pay restitution of $750.00 at a rate of $75.00 per month. Defense counsel objected and asked that payment be suspended pending review of the trial court's ruling. The trial court denied the request.

The Juvenile contends that he was not charged with, and did not admit to, any offense by which Trahan was permanently deprived of any property. In support of this argument, the Juvenile cites La.Ch.Code art. 897(B)(2)(c) [. . . ]

. . . .

The Juvenile also cites La.Code Crim.P. art. 895.1(A)(1), which provides:

When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim

in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.

The Juvenile argues that the trial court improperly applied the standard found in La.Code Crim.P. art. 895.1(A)(1). Additionally, he argues that the order of restitution was improper under the standards set forth in the criminal code and children's code, as there was no evidence that he was responsible for the theft of tools or that the tools were stolen.

The Juvenile cites the following from *State ex rel. K.J.*, 11-266, p. 12 (La.App. 4 Cir. 8/17/11), 71 So.3d 557, 564, in his brief to this court:

> [I]n a criminal case where the evidence establishes the victim has suffered a direct loss of actual cash, monetary loss due to physical damage to or loss of property, and/or incurred medical expenses, the sentencing judge must order restitution in an amount not to exceed the actual loss sustained or medical expense incurred by the victim as established at trial. The court may further order payment of an additional amount to the victim for any quantifiable loss or inconvenience (i.e. costs of rental car, cabs, medical equipment, etc.) suffered as a result of the criminal activity for which the defendant was convicted.

The Juvenile argues that *K.J.* shows that there must be evidence presented at a restitution hearing that the victim suffered a loss as a result of the crime for which he was convicted. The Juvenile argues that the victim presented a new allegation at the restitution hearing, claiming his truck had been burglarized. The Juvenile claims that he received no prior notice through arrest, charge, or documentation of the victim's claim.

The Juvenile notes that the only testimony presented was that of the victim. The Juvenile then argues there was no attempt to demonstrate the loss suffered was the result of the delinquent act charged in the petition.

In *State v. Boudreaux*, 98-1932 (La.App. 3 Cir. 6/16/99), 741 So.2d 860, the defendant was convicted of forgery. As a condition of probation, the trial court ordered the defendant to pay restitution in the

amount of $33,946.90.  On appeal, the defendant argued that the trial court erred in ordering restitution for the uncharged conduct of forgery by false making. The defendant explained that the bill of indictment charged her with forgery by altering checks and not forgery by false making.  In support of this claim, the defendant cited this court's opinion affirming her conviction, in which this court stated the defendant was guilty of forgery by altering certain checks and not by false making.  *See State v. Boudreaux*, 98-40 (La.App. 3 Cir. 6/3/98) (unpublished opinion).

The defendant then stated she was charged and convicted with altering only two checks; therefore, she should have been ordered to pay restitution on those two checks only.   This court noted that the defendant seemed to distinguish between the unauthorized checks she wrote to herself (forgery by false making) and the canceled checks she altered to conceal the false making.   Because the defendant was not charged with false making, she argued that she should not have been ordered to pay restitution for damages caused by that conduct.   This court addressed the issue, stating:

> Even though Defendant was not charged with the false making of the checks for which she actually received cash, she *was* charged with altering canceled checks in order to facilitate her forgery scheme.   As noted by this court's original opinion, "La.Code Crim.P. art. 895 grants the trial judge authority to impose as a specific condition of probation payment of a 'reasonable . . . restitution to the aggrieved party for damage or loss *caused by his offense . . .*' (Emphasis added)." *Id*. at p. 5, n. 2, Citing *State v. Alleman*, 439 So.2d 418 (La.1983); *State v. Labure*, 427 So.2d 855 (La.1983).   Because the offense committed by Defendant facilitated the forgery scheme by which she caused $33,496.90 worth of loss to the victim, the damage suffered by the victim was caused by the offense committed by Defendant.   Thus, the trial court was correct in ordering restitution in the amount of $33,496.90.

*Id*. at 862.

In *State v. Metlin*, 467 So.2d 876 (La.App. 3 Cir.1985), the defendant pled guilty to three counts of illegal possession of stolen things valued under $100.00 and was ordered to make restitution of $8,037.50 to the owners of the stolen things he received.   This court found that the trial court did not abuse its discretion in ordering the defendant to make restitution.   This court noted that the victims suffered a loss caused by the defendant's offense of receiving stolen things, to which the defendant pled guilty in misdemeanor amounts. The court found that this condition of the defendant's probation was

permitted under the provisions of La.Code Crim.P. art. 895(A)(7) and was reasonably related to his rehabilitation.

In *State v. Portie*, 08-1580 (La.App. 4 Cir. 9/16/09), 22 So.3d 213, the defendant was charged with theft of property having a value over $500.00. A jury found him guilty of attempted theft of property valued over $500.00. As part of his sentence, the defendant was ordered to pay restitution in the amount of $38,553.91. On appeal, the defendant argued that a sentence requiring payment of restitution for stolen property could only be justified upon a conviction for the actual crime of theft. The fourth circuit noted that the trial court, at the time restitution was imposed, stated it was perplexed and had no idea why the jury made the decision to find the defendant guilty of the lesser included offense of attempted theft. The fourth circuit then cited La.R.S. 14:27(C), which states that a defendant may be convicted of an attempt to commit a crime although it appears at trial that the crime intended or attempted was actually perpetrated in pursuance of the attempt. The fourth circuit then found the trial court acted within its discretion when ordering the defendant to pay full restitution to the victim.

In *State v. Moore*, 614 So.2d 145 (La.App. 3 Cir.1993), the defendant pled guilty to ten counts of misdemeanor theft and five counts of simple burglary. This court noted that restitution may have been ordered on counts to which the defendant did not enter pleas of guilty. This court found that a factual basis was stated for the record showing the defendant's participation in the crimes involving each of the victims to whom restitution was ordered; likewise, the defendant's possession of the various stolen things was not disputed. This court found that restitution as part of defendant's probation was permitted under the provisions of La.Code Crim.P. Art. 895(A)(7) and was reasonably related to his rehabilitation.

Based on the cases cited above, we find that the trial court properly ordered restitution, as simple logic and deduction demands a conclusion that the loss suffered by Trahan was caused by the offense committed by the Juvenile. Further, this court finds that the trial court's order is reasonably related to the Juvenile's rehabilitation.

*Id.* at 1285-88.

The Juvenile distinguishes *D.B.* by pointing out that the victim in that case had evidence in the form of receipts to prove the amount he had to spend to replace the items. In this case, Domingue testified that he had not replaced the items;

accordingly, the Juvenile argues that Domingue incurred no out-of-pocket expense for the items.[8]

As in *D.B.*, the victim in this case did not present evidence, other than testimony, of the existence of nor the original cost of the items taken from his vehicle. The court relied upon the victim's testimony regarding these facts, as did the juvenile court in this case. The fact that Domingue had not replaced the items at the time of the hearing does not alter the fact that a loss was incurred. These findings are within the trial court's vast discretion as to the imposition of restitution. *State v. Johnson*, 04-1266, (La.App. 3 Cir. 2/2/05), 893 So.2d 945. In *Johnson*, a panel of this court stated:

> [T]he trier of fact is to consider the value that the stolen items have to the victim. "Unless it is shown the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its *weight* being left to the *jury*." Further, the owner of stolen property may testify regarding the value of the stolen items without the necessity of being qualified as an expert, and such testimony "can constitute ample evidence of the property's value."

*Id*. at 955 (quoting *State v. Stack*, 97-1176, p.7 (La.App. 5 Cir. 4/15/98), 710 So.2d 841, 844).

Domingue's non-expert opinion regarding the value of the items is sufficient evidence of the property's value. The court appropriately considered the value that the items had to the victim, and the credibility of Domingue's testimony was properly assessed by the court. Thus, the juvenile court did not abuse its discretion is ordering the Juvenile to pay restitution for the items taken from the truck. Accordingly, this assignment of error is without merit.

---

[8]The Juvenile does not argue that the restitution award exceeds the pecuniary loss to the victim, which was a basis for relief being granted in *State in the Interest of B.A.*, 12-659 (La.App. 3 Cir. 12/19/12), 104 So.3d 833.

## ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, the Juvenile contends that the amount of restitution imposed by the trial court is excessive, i.e., that $200.00 a month is an unreasonable burden to place on an indigent fifteen year old, and it serves no rehabilitative purpose. In support of his position, the Juvenile relies upon *State in the Interest of B.A.*, 12-659, pp. 4-5 (La.App. 3 Cir. 12/19/12), 104 So.3d 833, 836, a case in which this court found a restitution award of $5,805.00 excessive:

> Even assuming that the actual damage to the Middle School is $5,805.00, that amount is still excessive. B.A. has no funds to fulfill this obligation and has no work skills to assist him in securing employment that would allow him to meet his obligation in the remaining probationary time. His one-year probation period began with the disposition on November 9, 2011, yet his restitution obligation was not set until March 28, 2012. In the roughly seven months remaining on his probation, B.A. would have to find gainful employment that would allow him to earn approximately $830.00 per month in order to satisfy this restitution obligation, while at the same time pursuing his education.

In *D.B.*, 137 So.3d at 1288-89, this court found a restitution award of $750.00 to be paid at a rate of $75.00 per month was not an unreasonable burden to place on a fourteen-year-old juvenile:

> The Juvenile further argues that mowing approximately five yards per month is too extreme a punishment. The Juvenile suggests to this court that he is unable to find any rehabilitative purpose in the trial court's order. Again, we disagree. We find that requiring a juvenile to account for a portion of the reasonable and direct consequences of his crime is an acceptable form of rehabilitation.

> While we concede that the trial court's order could have been done with more precision (such as considering the lack of yards to mow in the winter), overall we find that it did an excellent job of "balanc[ing] the needs of the child with the best interest of society." *State ex rel. Garner*, 484 So.2d 149, 154 (La.App. 3 Cir.1986), citing *State ex rel. Ray*, 432 So.2d 312 (La.App. 5 Cir.1983). Further, we recognize that much discretion is granted to the trial court because of the special nature of the juvenile proceeding. *Garner*, 484 So.2d 149. Particularly, we have found that "[a]lthough many of the amounts assessed by the trial court are replacement values, it was within the

trial court's discretion to choose an appropriate amount." *State v. Johnson*, 04-1266, p. 22 (La.App. 3 Cir. 2/2/05), 893 So.2d 945, 959. The trial court clearly acted within its discretion. Therefore, the assignment of error lacks merit.

*Id.* at 1288-89.

We find that the restitution amount of $200.00 per month was not an unreasonable burden to place on fifteen-year-old K.Z.

## DISPOSITION

We amend K.Z.'s disposition to give him credit for time served in a secure detention facility before the imposition of disposition, if any, and instruct the juvenile court to note the amendment in the written disposition and in the minute entry. We affirm the trial court's disposition ordering restitution for the personal items in the victim's vehicle and further ordering K.Z. to pay restitution of $3,200.21 at the rate of $200.00 per month.

**AFFIRMED AS AMENDED;**
**REMANDED WITH INSTRUCTIONS**.