## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2020 KJ 0927

## STATE OF LOUISIANA IN THE INTEREST OF L.J.G.

*DATE OF JUDGMENT:*    MAR 0 4 2021

ON APPEAL FROM THE JUVENILE COURT OF EAST BATON ROUGE,
NUMBER JU114140, DIVISION B
STATE OF LOUISIANA

HONORABLE GAIL GROVER, JUDGE

* * * * * *

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Dylan C. Alge<br>Andi Neal<br>Assistant District Attorneys<br>Baton Rouge, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Alyson Lang<br>Baton Rouge, Louisiana | Counsel for Defendant-Appellant<br>L.J.G. |

* * * * * *

BEFORE:  WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

Disposition: ADJUDICATION AND DISPOSITION AFFIRMED.

*Welch, J. Concurs in part and dissents in part and assigns reasons.*

**CHUTZ, J.**

L.J.G.,[1] who is a juvenile, was charged by petition in juvenile court with hit-and-run driving (count 1), a violation of La. R.S. 14:100, and reckless operation of a vehicle (count 2), a violation of La. R.S. 14:99. L.J.G. initially denied the allegations. He subsequently withdrew his denial and entered into a plea agreement wherein he admitted to the allegation of reckless operation of a vehicle. In accordance with the agreement, the State dismissed the hit-and-run driving charge. The juvenile court adjudicated the juvenile a delinquent and placed him on a deferred dispositional agreement with unsupervised probation for three months. The juvenile court also ordered the juvenile to pay $5,138.13 in restitution. L.J.G. now appeals, designating three assignments of error. We affirm the adjudication and disposition.

**FACTS**

The following facts are taken from the plea agreement. On July 23, 2019, Louisiana State Trooper Boudreaux was dispatched to the Innovation Park area near Burbank in East Baton Rouge Parish. L.J.G. was driving a vehicle and had attempted to turn at a fast rate of speed. He lost control of the vehicle and hit a pedestrian and four parked vehicles.

**ASSIGNMENT OF ERROR NUMBER ONE**

In his first assignment of error, L.J.G. asserts the juvenile court erred in ordering restitution as a condition of probation when the court lacked jurisdiction of the case because the disposition had expired. Specifically, L.J.G. asserts that the juvenile court lacked jurisdiction to impose restitution because he had completed his probation period prior to the ruling setting the amount of restitution L.J.G. was

---

[1] Because this matter involves a delinquency proceeding, we have used L.J.G.'s initials to protect his identity. See Uniform Rules-Courts of Appeal, Rules 5-1(a)(3) and 5-2.

required to pay. As such, L.J.G. argues the juvenile court was without authority to order restitution. This assertion is baseless.

The juvenile court maintained jurisdiction to impose restitution, and, as such, the restitution order is valid. Louisiana Children's Code article 313(A) provides:

> A court exercising juvenile jurisdiction no longer exercises such jurisdiction in any proceeding authorized by this Code upon:
>
> (1) Declination of jurisdiction.
>
> (2) Transfer of the proceeding.
>
> (3) Expiration or satisfaction of an informal adjustment agreement.
>
> (4) Expiration or satisfaction of an informal family services plan agreement.
>
> (5) Expiration, satisfaction, or vacation of a juvenile disposition or adult sentence.
>
> (6) Dismissal of the proceeding.

On February 10, 2020, L.J.G. was placed on a deferred dispositional agreement for a term of three months. As part of his plea agreement, L.J.G.'s conditions of probation required him to complete a driving course and to pay restitution in an amount to be determined.

The initial restitution hearing held on March 12, 2020, was laid over until April 1, 2020, which was prior to the expiration of L.J.G.'s unsupervised probation on May 10, 2020. On April 1, 2020, the juvenile court continued the hearing until May 13, 2020, due to COVID-19 concerns. Upon joint motion of the parties, the hearing was then continued until June 9, 2020. Following the hearing held on that date, the juvenile court set the amount of restitution to be paid by L.J.G.

Given that a condition of the plea was always that L.J.G. would be required to pay restitution, satisfaction of the deferred dispositional agreement was incomplete until restitution had been determined, ordered, and paid. See La. Ch.

3

Code art. 313(A). That is, the deferred disposition did not end when L.J.G. finished his unsupervised probation since all conditions of the agreement had not been satisfied. The juvenile court still possessed jurisdiction of the case and will continue to possess jurisdiction until restitution is fully paid. See *Id.*

Moreover, the period for ordering restitution was extended by both the juvenile court's continuance and the joint continuance of the parties. L.J.G. asserts in brief that the State had a duty to orally, or by written motion, seek to extend the duration of the disposition. L.J.G. cites no authority for this assertion. While the held-over restitution hearing originally was scheduled to be completed on April 1, 2020, the continuance invoked by the juvenile court, as well as the continuance joined in by L.J.G.'s own counsel, extended the restitution hearing past L.J.G.'s three-month period of unsupervised probation. The restitution hearing was completed on the first possible date that all parties were available.[2]

L.J.G.'s reliance on **State v. Broussard**, 408 So.2d 909 (La. 1981) is misplaced. **Broussard** did not involve restitution being disallowed because the defendant's probationary period had terminated. Rather, the **Broussard** Court found that, even granting the State's contention that a defendant's probationary period is interrupted by personal service of a rule to revoke his probation, no interruption had occurred when the rule to revoke Broussard's probation was not served on him prior to the expiration of his probationary period. **Broussard**, 408 So.2d at 910.

Based on the foregoing, this assignment of error is without merit.

---

[2] Furthermore, La. Ch. Code art. 896(D) provides that a deferred dispositional agreement shall remain in force for six months unless the child is discharged sooner by the court. See also La. Ch. Code art. 896(F). While the juvenile court initially placed the juvenile on unsupervised probation for a period of three months, the term of the deferred dispositional agreement, by operation of law, remained in force for six months. The juvenile court's order of restitution was rendered within that six-month period.

## ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE

In these related assignments of error, L.J.G. argues, respectively, that the juvenile court erred in ordering restitution in an amount exceeding the actual pecuniary loss to the victim and in ordering an indigent juvenile to pay restitution in an excessive amount.

Under La. Ch. Code art. 899(B)(2)(c), after adjudication of a delinquent act, the court may, as a condition of probation, impose a requirement that the child make reasonable restitution to any victim for any personal or property damage caused by the child in the commission of the delinquent act. It is within the juvenile court's vast discretion to choose an appropriate amount of restitution to be paid. See **State in Interest of N.J.**, 2020-0056 (La. App. 1st Cir. 7/24/20), ___ So.3d ___, 2020 WL 4250993, *3.

At the restitution hearing, Mary Lee Ellerson, the victim whose 2013 Chevrolet Malibu was totaled by L.J.G., testified her insurance company, Progressive Insurance (Progressive) paid $5,778.62 on the vehicle, on which she still owed $8,832.04. The State asked for restitution in the amount of $8,832.04 to be ordered. The juvenile court ordered restitution in the amount of $5,639.13, but authorized $500.00 (the maximum amount allowed) of that amount to be paid by the victim's compensation fund. L.J.G. was ordered to pay the remaining balance of $5,138.13 as restitution.

L.J.G. asserts in brief that the restitution ordered exceeds the actual pecuniary loss Ms. Ellerson sustained. Noting the market value of the vehicle at the time it was totaled was $5,638.13[3] and Progressive paid $5,778.62 directly to the finance company Ms. Ellerson used to finance the vehicle, L.J.G. argues Ms. Ellerson is being unjustly enriched by the amount he was ordered to pay. L.J.G. maintains he is not responsible for the financial arrangements Ms. Ellerson made

---

[3] This figure represented the market value set by Progressive.

with the finance company prior to her vehicle being totaled. Therefore, he asserts the actual loss Ms. Ellerson sustained was only the market value of the vehicle at the time of the accident, which Progressive has already paid on her behalf.

We disagree. At the time Ms. Ellerson's vehicle was totaled, she owed $15,559.55 on the vehicle. After Progressive paid $5,778.62 on the claim, the remaining balance owed was still almost $10,000.00. Even though she no longer had use of her vehicle, Ms. Ellerson was still obligated to continue making payments to the finance company. By the time of the March 2020 hearing, her additional payments had reduced the balance owed to $8,832.04.

While L.J.G. had nothing to do with the financial arrangements Ms. Ellerson made to purchase her vehicle, he is certainly responsible for the financial straits she has found herself in, which is that she is still required to pay the finance company $8,832.04 for a totaled vehicle she can no longer drive. The loss suffered by Ms. Ellerson was caused by the offense L.J.G. committed. Further, the juvenile court's order of restitution is reasonably related to the juvenile's rehabilitation. **See State in Interest of D.B.**, 2013-1364 (La. App. 3d Cir. 4/23/14), 137 So.3d 1282, 1285-88, writ denied, 2014-1092 (La. 1/9/15), 157 So.3d 596 (affirming an order that a juvenile, who admitted a charge of unauthorized use of a movable, pay restitution for tools taken from the truck, even though the juvenile was not charged with theft, and the items were not been listed in the police report). **See also State in Interest of K.Z.**, 2015-1029 (La. App. 3d Cir. 3/2/16), 186 So.3d 799, 807, writ denied, 2016-0610 (La. 5/2/16), 206 So.3d 881. Accordingly, there has been no unjust enrichment to the victim, and the juvenile court did not abuse its discretion in ordering the juvenile to pay restitution in the amount of $5,138.13.

L.J.G. further contends the amount of restitution ordered was unreasonable because he is indigent, and it serves no rehabilitative purpose. Requiring a juvenile

to account for a portion of the reasonable and direct consequences of his crime is an acceptable form of rehabilitation. **State in Interest of D.B**, 137 So.3d at 1288.

In **State in Interest of N.J.**, 2020-0056 (La. App. 1st Cir. 7/24/20), ___ So.3d ___, 2020 WL 4250993, a seventeen-year-old juvenile admitted to unauthorized use of a motor vehicle from which items had gone missing. Restitution was ordered in the amount of $3,229.15. The juvenile contended the amount was excessive because she was indigent. Affirming the restitution order, this court determined that the juvenile court did not abuse its vast discretion and "requiring N.J. to account for a portion of the reasonable and direct consequences of her crime is an acceptable form of rehabilitation despite her indigence, we find that the restitution amount of $3,229.15 was not an unreasonable burden to place on the now eighteen-year-old N.J." **State in Interest of N.J**, 2020 WL 4250993, at *3.

L.J.G. cites **State in Interest of B.A.**, 2012-659 (La. App. 3d Cir. 12/19/12), 104 So.3d 833, wherein the Third Circuit found that $5,805.00 in restitution was excessive. In **State in Interest of B.A.**, 104 So.3d at 836, the court found that the restitution amount was excessive, in part, because the amount exceeded the actual pecuniary loss resulting from the juvenile's burglary of a middle school. Moreover, unlike in **State in Interest of B.A.**, the restitution L.J.G. was ordered to pay does not exceed the victim's actual pecuniary loss. Although the victim established that she owed a balance of $8,832.04 on the vehicle L.J.G. totaled (after payment by Progressive), the juvenile court only ordered L.J.G. to pay $5,138.13 in restitution.[4]

This reduced amount clearly indicates the juvenile court considered L.J.G.'s ability to pay and the financial situation of his family. L.J.G.'s stepmother, Miriam

---

[4] As previously noted, the juvenile court also authorized the Victim's Compensation Fund to pay $500.00 to the victim, which when combined with L.J.G.'s payment of $5,138.13 in restitution, would leave the victim with a remaining balance owed of $3,193.91 on a totaled vehicle.

Hernandez, testified at the restitution hearing that she worked at a restaurant that had closed because of COVID. At the time of the hearing, Ms. Hernandez was working only two to three days a week cleaning construction sites. She stated she would return to the restaurant when it reopened. L.J.G.'s father does construction work approximately thirty to thirty-two hours a week, which is less than he normally worked before COVID. According to Ms. Hernandez, the only thing preventing L.J.G. from working is the fact that he is still in school. She further testified that L.J.G.'s twenty-year-old brother is working and also lives in their household. When the juvenile court asked Ms. Hernandez if her family would have the ability to pay $8,000.00 in restitution, she replied, "Not at the moment."

The juvenile court deferred the date that restitution payments were to begin for ninety days. Further, while the juvenile court set $5,638.13 as the amount of restitution, it reduced the amount L.J.G. was ordered to pay by $500.00 by ordering the Victim's Compensation Fund to contribute $500.00 toward the total amount.

We find that requiring a juvenile to account for a portion of the reasonable and direct consequences of his crime is an acceptable form of rehabilitation. We further find the juvenile court properly balanced the needs of the child with the best interest of society. It was within the juvenile court's discretion to choose an appropriate amount of restitution, and the court herein clearly acted within its discretion. Accordingly, we find the order for him to pay $5,138.13 in restitution was not an unreasonable burden to place on seventeen-year-old L.J.G. See **State in Interest of K.Z.**, 186 So.3d at 807-08.

These assignments of error are without merit.

**ADJUDICATION AND DISPOSITION AFFIRMED.**

STATE OF LOUISIANA

IN THE INTEREST OF

L.J.G.

2020 KJ 0927

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

---

**WELCH, J., concurring in part, and dissenting in part.**

*JGW*     I agree with the majority in affirming the juvenile's adjudication; however, I must respectfully dissent as to the juvenile's sentencing. While I sympathize with the victim of the crime, there is no way this juvenile, nor his parents, are going to be able to pay restitution in the amount of $5,638.13 in six months as required by the juvenile court's restitution order. The restitution order is setting this juvenile up for failure, which will most assuredly end in incarceration. For these reasons, I must respectfully dissent from the majority's affirmance of the juvenile's sentencing.